*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-BG-0849

IN RE ABIGAIL ASKEW, RESPONDENT.

A Suspended Member of the Bar of the
District of Columbia Court of Appeals
(Bar Registration No. 497703)

On Report and Recommendation of the Board on
Professional Responsibility
(BDN-037-12)

(Submitted January 8, 2014                          Decided July 31, 2014)

Before THOMPSON and EASTERLY, *Associate Judges*, and KING,[*] *Senior Judge.*

PER CURIAM: This court appointed Respondent Abigail Askew to represent Ronald Middleton, an incarcerated indigent client, in the appeal of the denial of a post-conviction motion. In relation to that representation, Ms. Askew was later charged with and admitted to eight violations of the District of Columbia Rules of Professional Conduct: Rule 1.1 (a) & (b) (failing to provide client with competent

---

[*] Senior Judge Schwelb was originally a member of the panel assigned to this case. Judge King replaced Judge Schwelb after he retired.

representation), Rule 1.3 (a) (failing to provide zealous and diligent representation), Rule 1.4 (a) (failing to keep client reasonably informed), Rule 1.4 (b) (failing to explain matter to client to enable client to make informed decisions), Rule 1.16 (d) (failing to protect client's interests on termination of representation), Rule 3.4 (c) (knowingly disobeying obligation under rules of a tribunal), and Rule 8.4 (d) (engaging in conduct that seriously interferes with the administration of justice).  Ms. Askew requested a public censure, stayed pending the successful completion of a probationary term.  But this request was rejected by both the Hearing Committee and the Board on Professional Responsibility as unduly lenient; the Board specifically noted Ms. Askew's "substantial and intentional violations of the Rules."  Both the Hearing Committee and the Board recommended instead that Ms. Askew receive a 30-day suspension, stayed, and one year of supervised probation with specific conditions.  Neither Ms. Askew nor Bar Counsel has filed an exception to the Report and Recommendation of the Board.

We agree with the Hearing Committee and the Board that more than a stayed public censure with probation is warranted in this case, both in light of the seriousness of Ms. Askew's professional misconduct—her intentional and virtually complete neglect of her court-appointed client, Mr. Middleton, who

notwithstanding the fact that he was imprisoned, expended great effort in an attempt to establish an attorney-client relationship with her—and in comparison with sanctions imposed in similar cases in this jurisdiction. For this reason, we conclude that the Board's recommended sanction, a stayed 30-day suspension with one year of probation, is also inadequate.

This court bears the ultimate responsibility of ensuring in disciplinary cases that any sanction imposed will adequately protect the public and the courts, maintain the integrity of the profession, and deter others from engaging in similar misconduct. To fulfill those objectives, we determine that a six-month suspension, with all but 60 days stayed, and a one-year probationary term is appropriate in this case. A 60-day suspension period will give Ms. Askew time to adequately structure her practice. A concurrently commencing one-year period of supervised probation will ensure that she does in fact take all the steps needed to achieve that goal. Moreover, if it is not an automatic consequence of her suspension, we also direct that Ms. Askew be removed from all panel lists for court-appointed counsel in Superior Court and this court, without prejudice to her ability to reapply once she has completed her term of suspension and probation.

## I. Facts and Procedural History

The following facts were found by the Hearing Committee and, without objection from Ms. Askew, accepted by the Board[1]: On June 18, 2010, this court made an appointment under the Criminal Justice Act (CJA) and assigned Ms. Askew to represent Ronald Middleton, who sought to appeal the denial of his pro se D.C. Code § 23-110 motion. This court appointed Ms. Askew to replace Mr. Middleton's first court-appointed attorney in this matter, who had died. At the time of Ms. Askew's appointment, a briefing order had been issued but no briefs had been filed in the case.

It is court-appointed counsel's obligation to notify a client of her appointment "by telephone or mail within thirty days of the appointment." Obligations of CJA Counsel in the District of Columbia Court of Appeals, (ver. 2008), *available at* http://www.dccourts.gov/internet/documents/cja_ obligations.pdf. Ms. Askew's order of appointment stated inaccurately that Mr. Middleton was incarcerated at USP Lewisburg. In fact, Mr. Middleton had been incarcerated at USP Canaan since 2008. Mr. Middleton's current address was

---

[1] The Hearing Committee heard testimony from Mr. Middleton and, after receiving a stipulation from Ms. Askew admitting to a number of adverse facts, it heard testimony from Ms. Askew in mitigation.

listed below his signature on several letters from Mr. Middleton to predecessor counsel which were in predecessor counsel's file; Ms. Askew had received that file, including Mr. Middleton's letters to predecessor counsel, by August or September 2010, but apparently did not review it with sufficient care. Ms. Askew also concededly could have "quickly and easily" confirmed Mr. Middleton's location on the Bureau of Prisons ("BOP") website, which allows anyone to search for an inmate by last name or BOP Register Number and learn their current location. Instead, after her appointment, Ms. Askew attempted to contact Mr. Middleton by sending letters to him at USP Lewisburg in July 2010 and then in September 2010.[2] Mr. Middleton did not receive these letters.

---

[2] The Hearing Committee did not credit Ms. Askew's claim that she had called USP Lewisburg in the fall of 2010 and had been told that "they don't do any phone calls, not even legal." It further noted that this assertion was inconsistent with Mr. Middleton's testimony that he could receive calls from counsel in prison and that, even if Ms. Askew had in fact made a phone call to USP Lewisburg, she had failed to take the obvious steps of either "ask[ing] personnel at USP Lewisburg whether Mr. Middleton was residing there or . . . talk[ing] to his case manager."

We note that, pursuant to BOP policy in place since 2002, inmates are authorized to have unmonitored telephone conversations with counsel with BOP staff assistance. BOP Program Statement, No. 5264.07, § 540.103 (Jan. 31, 2002), *available at* http://www.bop.gov/policy/progstat/5264_007.pdf. We also note that Ms. Askew acknowledged that once she realized that Mr. Middleton was at USP Canaan, she could have called him there. See *infra* note 6.

Meanwhile, Mr. Middleton was unaware either that his first court-appointed counsel had died or that a new attorney, Ms. Askew, had been appointed to represent him. In September 2010, now three months after Ms. Askew's appointment, Mr. Middleton wrote to the court seeking information on the status of his appeal. The court notified Mr. Middleton that he had new counsel, gave him Ms. Askew's contact information, and forwarded Mr. Middleton's letter to Ms. Askew. This did not prompt Ms. Askew to locate or reach out to Mr. Middleton, however. Moreover, she did not respond to Mr. Middleton when he (using the contact information provided by the court) wrote to her, told her he wanted to "have some input into what is going into the brief because this is my life on the line," and asked her to "tell me what I can do to help you help me." Indeed, she made no attempt to contact Mr. Middleton about his pending appeal for the next five months.

In this five-month period Mr. Middleton made many unsuccessful attempts to contact Ms. Askew by mail, phone,[3] and email.[4] Unable to communicate

---

[3] Mr. Middleton testified that he left Ms. Askew several voicemail messages during this period "[a]sking her to get in touch with me, write me, just let me know what's happening with my brief[,] if she's going to file anything . . . when's the next date when it's due." Ms. Askew did not respond to these messages.

directly with his attorney, Mr. Middleton also attempted indirect means. He wrote multiple letters to the court asking for help in late 2010 and early 2011. These letters, each including his correct address at USP Canaan and BOP Register Number, were forwarded to Ms. Askew by the court. In addition, Mr. Middleton's wife and sister attempted to contact Ms. Askew by phone and email during this period; in their correspondence they informed Ms. Askew that Mr. Middleton had not received her letters and asked her whether she had received Mr. Middleton's messages and letters. Although she was aware that Mr. Middleton and his family were attempting to reach her, Ms. Askew still made no attempt to contact Mr. Middleton or his family.

In February 2011 Ms. Askew sent Mr. Middleton a draft brief to file in his appeal—again to the incorrect USP Lewisburg address. She testified before the hearing committee that it was only when Mr. Middleton's sister informed her that he had not received the brief that Ms. Askew "finally realized"—nine months after

---

(…continued)
[4] Mr. Middleton emailed Ms. Askew using Corrlinks, the inmate email service which Mr. Middleton had access to while incarcerated at USP Canaan. To receive correspondence from an inmate on Corrlinks, the recipient must agree to accept emails. Ms. Askew conceded both that she had agreed to accept emails from Mr. Middleton and that, having indicated that Mr. Middleton could communicate with her in this manner, she then never logged into her Corrlinks account to see if he had written her.

her appointment—"that she had been using an incorrect address."[5] Ms. Askew testified that she looked at the return address on "his letters that he mailed to [predecessor counsel]" and saw "that he was mailing them from [USP] Canaan." She then mailed the draft brief to Mr. Middleton at USP Canaan.

This draft brief was the first and last communication that Mr. Middleton received from Ms. Askew during the fifteen months she represented him.[6] After receiving the draft, Mr. Middleton wrote Ms. Askew with comments about the draft. He asked her respond to him "as soon as possible," and to file the brief "as soon as you can." Mr. Middleton testified that he had communicated to Ms. Askew that "the brief was good and [that he] wanted her to file it."[7] Ms. Askew

---

[5] As noted above, Ms. Askew had no contact with Mr. Middleton's family from the time of her appointment to February 2011, but apparently, she finally exchanged "a few brief emails" with Mr. Middleton's sister between February and April 2011.

[6] Ms. Askew stipulated that the only time she communicated with Mr. Middleton was when she sent him introductory letters in 2010 to the wrong address and when she sent him a copy of the draft brief. She then testified that she "made no attempt to call or to visit Mr. Middleton after [she] found out he was at [USP] Canaan," which she admitted she "definitely could have done. I could have at least called."

[7] Although Ms. Askew told Mr. Middleton's sister in an email dated April 6, 2011 (admitted as an exhibit at the hearing), that she had not received Mr. Middleton's comments about the draft brief, Ms. Askew admitted before the hearing committee that she had received his feedback. Indeed, inconsistent with her stipulation that she did not communicate with him after she sent him the draft

(continued…)

made no revisions in response to his comments and did not respond to Mr. Middleton.[8]

The court had ordered Ms. Askew to file Mr. Middleton's brief on appeal within 60 days of her appointment. Before sending the brief to Mr. Middleton she had already sought and received four extensions of time to file. After she sent Mr. Middleton a draft of the brief in February 2011, Ms. Askew sought and received an

---

(…continued)

brief, see *supra* note 6, she testified that she had written him back in May 2011. She further testified that she could not provide a copy of the letter she had purportedly written because a computer virus "basically ate its way through [her] computer," and she had failed to backup her files properly. Noting the inconsistency with her stipulation and Mr. Middleton's testimony, the Hearing Committee did not credit Ms. Askew's assertion that she had written Mr. Middleton in May 2011.

[8] Ms. Askew asserted that she interpreted Mr. Middleton's comments as denying her permission to file the draft brief; indeed she claimed, without pointing to any documentation, that he was "very clear" that he had not given her approval to file the brief and she did not have his permission to file the brief without his approval—but she did not explain why she took no further steps to communicate with Mr. Middleton or to obtain his consent to file. She also asserted that Mr. Middleton told her that he did not want her to represent him and that "[h]e wanted to file [the brief] pro se, after I sent him the draft"—again without pointing to any supporting documentation. In fact this court's docket reflects that after six months of inaction by Ms. Askew, Mr. Middleton filed a request for appointment of new counsel, not a request to proceed pro se. After another month passed with no action by Ms. Askew, he repeated his request to have Ms. Askew removed and only then asked to be given permission to file pro se the draft brief Ms. Askew had sent him months earlier. As discussed below, the court appointed Mr. Middleton new appellate counsel instead.

additional five extensions of time to file a brief on Mr. Middleton's behalf. She filed a final motion to extend on June 10, 2011; she requested 15 days to file. She still had not filed a brief by July 8, 2011, when the court granted her motion and ordered that she file the brief, with a motion to file out of time, within 15 days. Ms. Askew did not comply with this order. On August 18, 2011, this court ordered Ms. Askew to file the brief within 10 days, along with a motion to late-file.[9] When Ms. Askew also failed to comply with this order, the court vacated Ms. Askew's appointment in September 2011. Because Ms. Askew made no effort to determine the status of Mr. Middleton's case between June and November 2011, however, she was not aware that she had been removed as counsel until two months after her appointment was vacated.[10]

---

[9] Ms. Askew testified that she received this order in the mail from the court but did not read it. She ultimately "discover[ed]" the court's order when she was putting together a copy Mr. Middleton's file for Bar Counsel; she stated that this court's order "was on my desk in a pile of stuff. . . . [I]t was just under another folder on my desk. It was in a stack."

[10] Ms. Askew learned that her appointment had been vacated when, in October 2011, she filed a motion to file out of time along with a brief for Mr. Middleton. (This brief appears strikingly similar to the draft she had sent Mr. Middleton eight months earlier and apparently was unaffected by the computer virus that she claimed had infected her computer.) The court issued an order on November 17, 2011 denying her motion to file out of time and declining to accept the brief.

We note again that Ms. Askew testified that she did not file a brief on Mr. Middleton's behalf during the pendency of her representation because she thought she did not have permission to do so. See *supra* note 8. In the end, she testified

(continued…)

Even after her removal as counsel, Ms. Askew continued to impede Mr. Middleton's attempt to pursue an appeal. Although she was ordered by the court to turn over all documentation to successor counsel within 20 days, she did not respond to any of the repeated attempts by Mr. Middleton's new counsel to obtain the documents related to his case[11]; other than a copy of the § 23-110 hearing transcript transmitted on November 15, 2011, she failed to turn over any documentation to successor counsel including client correspondence or the draft brief that she had prepared.[12] As a result, successor counsel was forced to move for further extensions of time to file his brief on Mr. Middleton's behalf.

Bar Counsel opened its investigation on October 12, 2011. A hearing was held on January 11, 2013 before the Ad Hoc Hearing Committee; Bar Counsel

---

(…continued)
that she was prompted to file the brief when she received a copy of Mr. Middleton's letter to Bar Counsel, and thus learned that "he was complaining because no brief had been filed."

[11] Successor counsel sent Ms. Askew letters on October 3, October 18, and November 8, 2011.

[12] Ms. Askew eventually provided further information to Mr. Middleton's counsel after her investigation by Bar Counsel had commenced. Ms. Askew testified that this transfer occurred when she handed over to successor counsel "a copy of what I gave [Bar Counsel]" when she met successor counsel by happenstance at a CLE event.

presented substantial evidence regarding the alleged violations and Ms. Askew's persistent neglect, including testimony from Mr. Middleton and documentation of his extensive attempts to contact her. Ms. Askew stipulated to the charges and many of the underlying facts; she testified only in mitigation of sanction.

Specifically, Ms. Askew described the disorganized nature of her practice and her sporadic difficulties receiving mail. She proffered no excuse for her failure to respond to letters, calls, and emails from Mr. Middleton and his family, but she asserted that she did not receive notice of her removal from Mr. Middleton's case or mail from successor counsel as the result of "off-and-on" mismanagement of mail at a shared office arrangement with other CJA panel attorneys. The Hearing Committee did not credit this testimony "as Respondent presented no supporting evidence or documentation showing late-forwarding of mail by the virtual office manager or landlord, or that other tenants at her address experienced mail problems, or that the landlord or virtual office manager had been notified of a mail problem."

On February 1, 2013, Bar Counsel filed a Proposed Findings of Fact, Conclusions of Law, and Recommendations as to Sanctions. Ms. Askew filed her reply on February 25, 2013 in which she again conceded misconduct described by

Bar Counsel, but requested that the Hearing Committee impose a stayed public censure with one year probation. On May 22, the Hearing Committee issued its report adopting Bar Counsel's recommendation for a stayed 30-day suspension pending successful completion of one year of probation with conditions, including supervision by a practice monitor. The Board adopted the factual findings and the proposed sanctions of the Hearing Committee, and recommended that this court make the implementation of the recommendations of the practice monitor as an additional mandatory condition of probation. No exceptions were filed to the report and recommendation of the Board.

## II. Analysis

As Ms. Askew has conceded all charged rule violations, the only issue before the court is the appropriate sanction. This court values and heavily relies upon the recommendations of the Board on Professional Responsibility, but "[u]ltimately . . . the system of attorney discipline, including the imposition of sanctions, is the responsibility and duty of this court." *In re Cleaver-Bascombe*, 986 A.2d 1191, 1195 (D.C. 2010) (internal quotation mark omitted); *see also* D.C. Bar R. XI, § 9 (h), (j). Our general deference to the Board's recommendation regarding sanctions, D.C. Bar R. XI, § 9 (h)(1), will yield "[w]hen the court

disagrees with the Board as to the seriousness of the offense or the demands of consistency." *In re Cleaver-Bascombe*, 986 A.2d at 1195 (internal quotation marks omitted). In determining the appropriate sanction we look to a number of factors, including: "(1) the nature of the violation, (2) the mitigating and aggravating circumstances, (3) the need to protect the public, the courts, and the legal profession, and (4) the moral fitness of the attorney." *Id.* at 1195 (citation and internal quotation marks omitted). Examining these factors, we agree with the Board's conclusion that suspension was warranted but determine that the Board's recommended discipline of a stayed 30-day suspension with one year of probation is inadequate as a sanction for Ms. Askew's misconduct.

First, examining the nature of the violation, we agree with the Board that the violations in this case were serious, "substantial[,] and intentional." For approximately 15 months, Ms. Askew failed to communicate with Mr. Middleton, a client she knew to be indigent and incarcerated. For much of that time she failed to take basic steps to ascertain his correct address to allow her to contact him, and despite Mr. Middleton's persistent efforts to engage her, Ms. Askew actively ignored both him and the family members who reached out to her on his behalf. She ignored even communications from Mr. Middleton forwarded to her by this court after Mr. Middleton contacted the court to alert us to her failure to

communicate with him. Furthermore, for approximately 15 months, she failed to do the work this court ordered her to do on Mr. Middleton's behalf—file a brief with this court. Although she had been ordered on appointment to file the brief in 60 days, she filed nine motions for extensions of time before her appointment was vacated.[13] Her disregard of Mr. Middleton's case was so complete that she was unaware that she had been removed as counsel for two months. Finally, even after her appointment had been vacated, Ms. Askew continued to impede and delay resolution of Mr. Middleton's appeal by failing to hand over to new counsel the records he needed to prepare a brief on Mr. Middleton's behalf, with the result that the successor counsel had to request additional time to complete his work. In short, as the Hearing Committee found, Ms. Askew's "omissions and commissions were not the result of inadvertence or errors of judgment but rather involved a conscious disregard for the responsibilities that she owed to her client which are the hallmarks of serious neglect."

---

[13] Five of those extensions were sought after Ms. Askew sent a draft brief to Mr. Middleton in February 2011. But when she at last filed a brief on Mr. Middleton's behalf after she had been removed as his counsel, the brief she filed was substantially similar to the February draft, indicating that she had done little if any additional work on it in this seven month period. See *supra* note 10.

Ms. Askew offered no mitigating explanation for her neglect of Mr. Middleton's case. Although Ms. Askew apparently regarded her failure to adequately organize her practice or secure a consistent and reliable method of receiving mail as mitigating factors in this case, we view her testimony on this subject differently. To begin with, setting up organizational and communication systems is a fundamental element of legal practice. Thus, we perceive these facts not as mitigation but rather as a source of ongoing concern as to Ms. Askew's ability to adequately fulfill her duties as a lawyer. *See In re Stow*, 633 A.2d 782, 784-85 (D.C. 1993) (listing disorganization as one of the "troublesome aspects of Respondent's practice"). In any event, in testimony that the Hearing Committee did not credit, see *supra* page 13, Ms. Askew only proffered office management challenges as the reason why she was unaware either that she had been removed as Mr. Middleton's counsel or that successor counsel had made repeated requests for her files.[14] She never asserted that these were the reasons she failed over the fifteen months of her representation to communicate with Mr. Middleton and his family. In other words, Ms. Askew's testimony as to the disorganization of her practice does not explain what the Hearing Committee described as Ms. Askew's

---

[14] Even if she had not received the court order demanding that she turn over all documentation to successor counsel or successor counsel's requests, Ms. Askew had an independent obligation to do so upon termination of her representation. D.C. R. Prof. Conduct 1.16 (d).

"indifference . . . toward Mr. Middleton," and "her lack of commitment and dedication to Mr. Middleton's interests."

We also consider "the need to protect the public, the courts, and the legal profession." *In re Cleaver-Bascombe*, 986 A.2d at 1195 (internal quotation mark omitted). We weigh heavily the fact that Ms. Askew was appointed to represent Mr. Middleton under the Criminal Justice Act. "The District of Columbia Criminal Justice Act, like its federal counterpart, was designed to ensure that indigent defendants would receive adequate counsel." *Gregory v. United States*, 393 A.2d 132, 141 (D.C. 1978) (footnote omitted). In recognition of the fact that, indigent defendants, resources aside, may not have the ability even to locate counsel to represent them (particularly if they are incarcerated), this court endeavors to fulfill its responsibility to provide counsel under the Criminal Justice Act by "develop[ing] and maintain[ing] a panel of practicing attorneys who are approved by the court as competent to provide adequate representation on appeal for persons qualifying under the [CJA]." Plan for Furnishing Representation to Indigents Under the District of Columbia Criminal Justice Act (hereinafter "CJA Plan"), § III (A), *available at* http://www.dccourts.gov/internet/documents/cja_plan.pdf. Our aim is to provide indigent defendants with "not just the 'mere formal appointment' of someone who

happens to be a lawyer but more critically legal assistance that is reasonably diligent, conscientious and competent." *United States v. Bailey*, 581 F.2d 984, 989 (D.C. Cir. 1978) (footnotes omitted); *see also* CJA Plan, § III (A) (the court seeks to ensure that indigent defendants are offered counsel of the "highest qualifications"). Needless to say, this court relies on court-approved panel attorneys who receive court appointments to fulfill their obligations to competently represent and zealously advocate for their clients. When a panel attorney so egregiously fails to fulfill this obligation, it undermines the aim of the Criminal Justice Act, and reflects negatively on both this court and the legal profession.

Lastly, we consider Ms. Askew's "moral fitness" to continue to represent clients in the District of Columbia. A determination as to the moral fitness of an attorney encompasses an attorney's conduct while representing clients as well as compliance with Bar Counsel's investigation and the attorney's representations made to the Hearing Committee. *See In re Kanu*, 5 A.3d 1, 17 (D.C. 2010) (determining that attorney lacks moral fitness due to "lack of responsiveness and dishonesty to her clients, Bar Counsel and the Hearing Committee"). In this case, both the Hearing Committee and the Board "did not credit some of Respondent's testimony," but stopped short of determining that Ms. Askew had been intentionally dishonest, and observed only that her "apparent confusion about her

correspondence with Mr. Middleton is consistent with the disorganization in her practice." We disagree that certain points of Ms. Askew's questionable testimony can be attributed to "confusion." Indeed, we are troubled by Ms. Askew's willingness at the hearing to make representations that not only contradict prior factual assertions, but also would lack the ring of truth even if they had been made in the first instance. See, *e.g.*, *supra* notes 2 & 7.

Recognizing that "the choice of sanction is not an exact science," *In re Edwards*, 870 A.2d 90, 94 (D.C. 2005) (internal quotation marks omitted), examination of all of these factors lead us to conclude that more is warranted in this case than the Board's recommended discipline of a stayed 30-day suspension with one year of probation. *See id.* (appropriate sanction "depend[s] on the facts and circumstances of each particular proceeding" (internal quotation mark omitted)). This conclusion is reinforced by our examination of other cases and our determination that the Board's recommended discipline would "foster a tendency toward inconsistent dispositions for comparable conduct." *In re Cleaver-Bascombe*, 986 A.2d at 1194.

This court has imposed more lenient sanctions of stayed 30-day or even 90-day suspensions where we have viewed counsel's conduct as a deviation from a

regular course of responsible legal practice. For example, we imposed a stayed 30-day suspension in *In re Mance*, 869 A.2d 339, 342 (D.C. 2005), as a sanction for counsel's neglect; we determined that counsel's nearly complete abdication of his responsibilities to his client were but a single "aberration" in the career of an attorney with an "'excellent reputation' and 'lengthy history' as a criminal practitioner." There is no similar information in the record indicating that Ms. Askew's neglect of Mr. Middleton is "aberrational." Rather, her belated realization at the hearing that Mr. Middleton, both indigent and incarcerated, was a vulnerable client who "[did]n't get to pick" his attorney and who could do little to remedy his inability to effectively communicate with her, suggests a more fundamental failure to understand her duties as court-appointed counsel. We also note that this court has vacated Ms. Askew's CJA appointment in at least one other criminal case in which she failed to file the brief or otherwise respond to court order.

Likewise we have imposed stayed suspensions of 30 and 90 days respectively for similar neglect only after having determined that there were substantial mitigating factors. *See In re Baron*, 808 A.2d 497, 498 (D.C. 2002) (stayed 30-day suspension with one year probation was appropriate where respondent testified that she was significantly overwhelmed by the responsibilities

of being the sole care provider for her disabled son, and where, as a consequence of an earlier received admonition, counsel had already taken steps to improve the structure of her practice); *In re Ontell*, 724 A.2d 1204, 1205 (D.C. 1999) (90-day suspension, 60-days stayed, with one year probation appropriate where respondent experienced complications with side effects of medication for a serious medical condition at the time of representation). But as discussed above, Ms. Askew put forward no excuse as to why she failed so completely to communicate with Mr. Middleton; following Bar Counsel's investigation, the Board concurred with the Hearing Committee's assessment that "the reason for the neglect 'remain[ed] unclear.'"

In analogous cases of what Ms. Askew's own counsel described as "egregious neglect" of a court-appointed client, without mitigating circumstances, this court has imposed a suspension of six months or more and has required counsel to serve some period of that suspension. *See, e.g., In re Rosen*, 470 A.2d 292, 293 (D.C. 1983) (imposing six-month suspension for neglect and intentional failure to carry out client's objectives in court-appointed representation); *In re Lieber*, 442 A.2d 153, 156 (D.C. 1982) (imposing six-month suspension where respondent was appointed to represent a client as a part of the Superior Court's Inmate Civil Assistance Project and then failed to enter an appearance or notify the

Superior Court that he did not plan to represent the client); *In re Whitlock*, 441 A.2d 989, 992 (D.C. 1982) (imposing six-month suspension for serious neglect of court-appointed clients); *see also In re Stanton*, 470 A.2d 272, 265, 278-79 (D.C. 1983) (imposing a full term of suspension of one year and one day for serious neglect of two court-appointed clients who "do not have available to them the protective mechanism that the client of the retained lawyer does: that is, simply to change lawyers," and noting that Respondent's "habit of keeping [them] largely in the dark about the progress of their cases is deplorable").

Against this backdrop, we think it appropriate to impose a six-month suspension, with all but 60 days stayed. To the extent Ms. Askew needs time to restructure her practice and ensure that she has adequate mail delivery, phone messaging, a working knowledge of the Corrlinks system, and a functioning computer, 60 days should give her the time she needs. A concurrently commencing one-year period of supervised probation—with all conditions recommended by the Board[15]—will ensure that Ms. Askew has in fact taken all the

---

[15] The Board recommended one year of supervised probation with the following conditions: Respondent (1) shall not commit any other disciplinary rule violations; (2) shall attend 10 hours of Continuing Legal Education classes offered by the D.C. Bar, pre-approved by the Bar Counsel, and provide to Bar Counsel proof of attendance at such classes within 30 days of attendance, but not later than 30 days before the expiration of probation; (3) shall be evaluated by the D.C. Bar

(continued…)

steps needed to have a properly functioning law practice. *See, e.g., In re Evans*, 902 A.2d 56, 79 (D.C. 2006) (imposing six-month suspension with 90 days stayed pending completion of one year of probation and requiring that respondent submit proof of completion of CLE requirement prior to reinstatement "[t]o ensure that he has sufficient preparation for reinstatement"); *In re Edwards*, 870 A.2d at 97 (imposing a period of oversight by a practice monitor commencing during suspension where court and the Board remained "concerned that [respondent] remains confused about [the appropriate operation of her legal practice] . . . and still has not adopted adequate procedures in her law office"); *see also In re Collins*, 723 A.2d 1213, 1215 n.1 (D.C. 1999) (imposing reciprocal discipline including a concurrent period of suspension and probation). In the meantime, if it is not an automatic consequence of her suspension, Ms. Askew should be removed from all panel lists for court-appointed counsel in Superior Court and this Court. This is

---

(…continued)

Lawyer Assistance Program, and sign a limited waiver permitting the Program to confirm compliance with this condition and cooperation with the evaluation process; (4) shall undergo an assessment by the D.C. Bar's Assistant Director for Practice Management Advisory Services, or his designee, implement any recommendations he may make, and sign a limited waiver permitting that program to confirm compliance with this condition and cooperation with the assessment process. We note that Ms. Askew "has recognized that she would benefit from the conditions of probation proposed by Bar Counsel; and thus, has accepted probation and all of the proposed conditions for probation including practice monitoring and LAP evaluation."

without prejudice to her ability to reapply to serve as court-appointed counsel once she has completed her term of suspension.

Accordingly, it is hereby ordered that, effective 30 days from this decision, Respondent Abigail Askew is suspended for a period of six months, all but 60 days stayed, with a concurrently commencing period of one-year supervised probation with all conditions recommended by the Board. See *supra* note 15.

*So Ordered.*