*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-BG-213

IN RE CHARLES P. MURDTER, RESPONDENT.

FILED 2/4/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

A Member of the Bar of the
District of Columbia Court of Appeals
(Bar Registration No. 375905)

On Report and Recommendation of the
Board on Professional Responsibility
(BDN-489-10)

(Argued January 11, 2016                    Decided February 4, 2016)

*James T. Maloney* for respondent.

*Elizabeth A. Herman*, Deputy Disciplinary Counsel, with whom *Wallace E. Shipp*, *Jr.*, Disciplinary Counsel, and *Jennifer P. Lyman*, Senior Assistant Disciplinary Counsel, for the Office of Disciplinary Counsel.

*Elizabeth J. Branda*, Executive Attorney, filed a statement in lieu of brief for the Board on Professional Responsibility.

Before EASTERLY and MCLEESE, *Associate Judges*, and FARRELL, *Senior Judge*.

PER CURIAM: Between September 2009 and November 2010 respondent failed to file briefs in five separate appeals in which this court had appointed him to represent convicted defendants under the Criminal Justice Act (CJA). He likewise failed to respond to numerous orders directed to him by the court in

connection with the appeals.[1]  In November 2010 his appointments were vacated, requiring the appointment of new counsel and attendant delay in each appeal.

A Hearing Committee appointed by the Board on Professional Responsibility (the Board) found that in each matter respondent had committed seven violations of the District of Columbia Rules of Professional Conduct.[2]  The Board, on review, agreed that clear and convincing evidence supported each charged violation, and has recommended that respondent be suspended from the practice of law in this jurisdiction for six months, with all but sixty days of the suspension stayed in favor of probation on specified conditions.

Respondent's sole challenge before us is to the recommended sanction. Joined by Disciplinary Counsel, he argues that suspension is too severe in the

---

[1]  Respondent subsequently pled guilty to two counts of criminal contempt for failing to obey court orders in two of the appellate matters.  He was sentenced to four months of imprisonment, suspended in favor of concurrent nine-month terms of unsupervised probation.

[2]  Rule 1.1 (a) & 1.1 (b) (failure to provide competent representation); Rule 1.3 (a) (failure to provide diligent and zealous representation); Rule 1.3 (b)(1) (intentional failure to seek client's lawful objectives); Rule 1.3 (c) (failure to act with reasonable promptness); Rule 3.4 (c) (knowingly disobeying obligations under the rules of a tribunal); and Rule 8.4 (d) (serious interference with the administration of justice).

circumstances and that public censure is the appropriate sanction, given the evidence of his remorse and rehabilitation and an otherwise unblemished legal career. The Board's report and recommendation, however, and the findings of the Hearing Committee it incorporates, satisfy us that the recommended suspension "falls within the wide range of acceptable outcomes" and that we should not reject the "strong presumption in favor of its imposition." *In re Martin*, 67 A.3d 1032, 1053 (D.C. 2013) (internal quotation marks omitted); *see* D.C. Bar R. XI, § 9 (h)(1). We adopt the Board's report, appended to this opinion, and take the occasion to explain briefly our disagreement with aspects of Disciplinary Counsel's argument for a lesser sanction.

Disciplinary Counsel maintains that the Board and the Hearing Committee gave disproportionate weight to "the seriousness of [respondent's] conduct," *Martin*, 67 A.3d at 1053, while undervaluing other, mitigating factors. Specifically, Disciplinary Counsel emphasizes respondent's demonstrated cooperation with Disciplinary Counsel and commitment to change, further arguing that respondent's clients did not suffer actual prejudice because their convictions were eventually affirmed on appeal. But, as our opinion in *In re Askew*, 96 A.3d 52 (D.C. 2014) (per curiam), makes clear, respondent's disregard of client matters

took on heightened significance in the context of his appointment to represent indigent appellants:

> We weigh heavily the fact that Ms. Askew was appointed to represent [the appellant] under the Criminal Justice Act. . . . When a [CJA] panel attorney so egregiously fails to fulfill [her] obligation [to competently represent and zealously advocate for . . . clients], it undermines the aim of the [CJA], and reflects negatively on both this court and the legal profession.

*Id.* at 60. Respondent, it scarcely needs repeating, accepted and then largely ignored appointment in not one but five such appeals. And this indifference to his client obligations went hand-in-glove with disregarding multiple related orders of this court, conduct itself "seriously interfer[ing] with the administration of justice." D.C. R. Prof. Conduct 8.4 (d).

Altogether, respondent's derelictions went beyond a "fail[ure] to make filings" (Brief for Disciplinary Counsel at 14) and, even accounting for the factors shown in mitigation, require discipline commensurate with this court's responsibility to "protect the public and the courts, maintain the integrity of the profession, and deter others from engaging in similar misconduct." *In re Askew*,

96 A.3d at 58. Disciplinary Counsel is legitimately concerned with not "punishing" attorneys who are genuinely remorseful and committed to remediation, but that concern cannot be at the expense of deterring a lawyer's gross indifference, as exemplified here, to duties owed both clients and the court.

The Board's report and recommendation, by contrast, appropriately balances the competing considerations. While giving full weight to the evidence in mitigation credited by the Hearing Committee, the Board was convinced that a lesser sanction than actual suspension would minimize the seriousness of respondent's combined defaults. In its view, "if [r]espondent had not been genuinely remorseful, cooperated with [Disciplinary Counsel] and otherwise had a remarkable and commendable legal career," the multiple "instances of intentional neglect . . . might well have warranted a sanction harsher than" it was recommending. Even without the deference the Board's recommendation deserves, *see Martin*, 67 A.3d at 1053, we agree with this assessment of the conduct and sanction necessary for deterrence to be effective.

Accordingly, it is hereby ordered that, effective thirty days from this decision, respondent Charles P. Murdter is suspended for a period of six months,

all but sixty days of which is stayed in favor of probation for one year, subject to the conditions set forth in the Board's report. Respondent's attention is drawn to the provisions regarding his eligibility for reinstatement under D.C. Bar R. XI, § 16 (c), including the filing of the affidavit required by D.C. Bar R. XI, § 14 (g). *See In re Slosberg*, 650 A.2d 1329, 1331-33 (D.C. 1994).

*So ordered.*

DISTRICT OF COLUMBIA COURT OF APPEALS
BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of:                          :
                                           :
     CHARLES P. MURDTER,          :          Board Docket No. 13-BD-093
                                           :          Bar Docket Nos. 2010-D489,
Respondent.                        :          2010-D490, 2010-D491,
                                           :          2010-D492 and 2010-D493
A Member of the Bar of the         :
District of Columbia Court of Appeals:
(Bar Registration No. 375905)      :

REPORT AND RECOMMENDATION OF THE
BOARD ON PROFESSIONAL RESPONSIBILITY

Respondent, Charles P. Murdter, was charged with violations of the disciplinary rules arising from his failure to file appellate briefs, following his appointment by the D.C. Court of Appeals to represent defendants under the Criminal Justice Act, and his subsequent guilty plea to criminal contempt for failing to obey the Court's orders in two of those five matters. Respondent stipulated to the allegations of misconduct, and the Hearing Committee found clear and convincing evidence to support them. The parties agreed that Respondent should receive a public censure, but the Hearing Committee recommended that Respondent be suspended for a period of six months with all but 60 days stayed, and that he be placed on one year of unsupervised probation.

While Bar Counsel and Respondent have urged the Board to adopt the Hearing Committee's findings of fact and conclusions of law, they have taken exception to the Hearing Committee's recommended sanction, arguing that public censure is the appropriate sanction here. For the reasons set forth below, the Board agrees with the findings of fact, conclusions of law and recommended sanction of the Hearing Committee, with one modification. Unlike the Hearing Committee, we recommend that Respondent's probation include conditions intended to ensure his continued ethical practice.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Hearing Committee's findings are based on the stipulations of the parties, the documentary evidence and the testimony of Respondent. The Board, having reviewed the record and considered the arguments of the parties, adopts the Hearing Committee's factual findings as supported by substantial evidence in the record. *See* D.C. Bar R. XI, § 9(h)(1); Board Rule 13.7. In sum, the findings show that between September 8, 2009, and April 8, 2010, the Court appointed Respondent under the Criminal Justice Act ("CJA") to represent five indigent clients on appeal of their criminal convictions. Respondent failed to brief any of the cases, despite multiple briefing orders of the Court, and as a result, on November 8, 2010, the Court vacated the appointments and appointed new counsel

to represent Respondent's clients. In addition, Respondent pleaded guilty to contempt for the failure to file briefs in two of the matters, and was sentenced to four months' incarceration, with execution of the sentence suspended in favor of nine months of unsupervised probation for each count, to run concurrently.

The Hearing Committee found that the testimony, stipulations, and exhibits established that in all five of the appeals where Respondent was appointed by the Court, Respondent violated Rules 1.1(a) (competent representation), 1.1(b) (skill and care), 1.3(a) (diligence and zeal), 1.3(b)(1) (intentional failure to seek client's lawful objectives), 1.3(c) (reasonable promptness), 3.4(c) (knowingly disobeying the obligations under the rules of a tribunal) and 8.4(d) (serious interference with the administration of justice). We agree that there is clear and convincing evidence to support each of the Hearing Committee's findings and adopt and incorporate them for the reasons stated in the Hearing Committee's report.

## RECOMMENDED SANCTION

The Board agrees with the Hearing Committee for all its stated reasons that Respondent should be suspended for a period of six months for his intentional neglect of multiple Court-appointed criminal appeals and the consequent findings of contempt. We further concur with the Hearing Committee's recommendation to stay all but 60 days of the suspension and to place Respondent on probation for one

year. However, unlike the Hearing Committee, we recommend that conditions be attached to the probation. We explain our sanction recommendation more fully below.

The parties contest the Hearing Committee's sanction recommendation as based on the mistaken belief that it considered itself "bound" to recommend the identical discipline imposed in *In re Askew*, 96 A.3d 52 (D.C. 2014) (per curiam), where the Court imposed a six-month suspension, with all but 60 days stayed, and supervised probation with conditions for the intentional neglect of a CJA appeal. The Board does not understand the Hearing Committee to have concluded that it was "bound" by *Askew* in the sense that it was *required* to impose the identical sanction. Under our disciplinary law, neither the Board nor a hearing committee is "bound" to recommend a specific sanction.[1] Rather, the determination of the appropriate sanction is governed by D.C. Bar R. XI, § 9(h)(1), which provides for the imposition of a sanction that is consistent with dispositions for comparable misconduct or is otherwise not unwarranted. The Hearing Committee and the

---

[1] The Hearing Committee and the Board's sanction recommendation is pre-determined only for crimes of moral turpitude where disbarment is mandatory under D.C. Code § 11-2503(a). In addition, there is a presumption of disbarment for cases of intentional or reckless misappropriation. *See In re Addams,* 579 A.2d 190, 191 (D.C. 1990) (en banc). Otherwise, all sanction determinations are governed by the comparability standard of D.C. Bar R. XI, § 9(h)(1).

Board also must take into consideration the various sanction factors, which address the facts and circumstances of the misconduct.[2]  *See*, *e.g.*, *In re Martin*, 67 A.3d 1032, 1053 (D.C. 2013); *In re Hutchinson*, 534 A.2d 919, 924 (D.C. 1987) (en banc).  The Hearing Committee's sanction analysis conformed to these requirements.

The Hearing Committee addressed *Askew* in some detail, because *Askew* is the most recent case involving the intentional neglect of a CJA appeal.  *See* H.C. Report at 19-22.  The Hearing Committee recognized both the similarities and the differences between *Askew* and the present case.  In both cases, the respondents did not make court ordered filings and were subsequently removed by the Court and the appeals transferred to successor counsel.  However, as the parties note, unlike Respondent here, Ms. Askew failed to cooperate with successor counsel, to take responsibility for the misconduct, or to provide credible testimony explaining the misconduct.  *Askew*, 96 A.3d at 58-60.  At the same time, *Askew* involved a single

---

[2] Those sanction factors include: (1) the seriousness of the misconduct; (2) the prejudice, if any, to the client; (3) whether the conduct involves dishonesty and/or misrepresentation; (4) the presence or absence of violations of other disciplinary rules; (5) whether the attorney has a previous disciplinary history; (6) whether or not the attorney acknowledges his or her wrongful conduct; and (7) circumstances in mitigation.  *Martin*, 67 A.3d at 1053; *Hutchinson*, 534 A.2d at 924.

instance of intentional neglect of a criminal appeal, while Respondent intentionally neglected five appeals within the same time frame, and pleaded guilty to two counts of contempt of court related to his neglect, for which he was sentenced to four months of incarceration, suspended in favor of nine months of unsupervised probation. H.C. Report at 3-9. Certainly, if Respondent had not been genuinely remorseful, cooperated with Bar Counsel and otherwise had a remarkable and commendable legal career, the four additional instances of intentional neglect (not to mention a criminal conviction for two counts of contempt) might well have warranted a sanction harsher than the suspension imposed in *Askew*.

Further, the Hearing Committee did not rely on *Askew* alone, but considered it together with other cases of intentional neglect to determine the appropriate sanction under D.C. Bar R. XI, § 9(h)(1). *Id.* at 19-22 (citing *In re Drew*, 693 A.2d 1127 (D.C. 1997) (per curiam) (60-day suspension for intentional neglect of clients in two criminal matters); *In re Grimes*, 687 A.2d 198 (D.C. 1996) (per curiam) (one-year suspension with fitness for violations in five cases over six-year period, including neglect, intentional failure to seek clients' lawful objectives, intentional prejudice or damage to clients, failure to take reasonable steps to avoid foreseeable prejudice to clients and lack of candor to clients about the status of their matters); *In re Ryan*, 670 A.2d 375 (D.C. 1996) (four-month suspension with fitness for

attorney with no disciplinary history who engaged in violations in five matters over a two-year period including neglect, intentional failure to pursue a client's lawful objectives, intentional failure to fulfill contract of employment, intentional prejudice or damage to a client, and failure to return papers and property to client after being terminated); *In re Lyles,* 680 A.2d 408 (D.C. 1996) (per curiam) (six-month suspension with fitness for violations in four matters spanning over a year, including neglect and conduct that seriously interfered with the administration of justice)). Thus, the Hearing Committee's report, read in context, shows that it did not consider itself "bound" by *Askew*, in the sense that it lacked the discretion to consider an alternative sanction, but that it relied upon *Askew* as the most recent, comparable case in assessing the appropriate discipline.

Based on our review of the Hearing Committee's sanction analysis, including the compelling mitigation evidence, we agree with the Hearing Committee's recommendation of a six-month suspension with all but 60 days stayed as the appropriate discipline for Respondent's misconduct. That sanction meets the consistency requirement of D.C. Bar R. XI, § 9(h)(1) based on comparable cases, including *Askew*.[3] In contrast, the public censure recommended

---

[3] Neither Bar Counsel nor Respondent has offered a case to support the issuance of a public censure for the intentional neglect of multiple appeals and related contempt convictions, nor has the Board been able to identify one.

by the parties is inadequate, given Respondent's intentional and complete neglect of his multiple court-appointed clients and disregard of court orders. *Cf. Askew*, 96 A.3d at 54.

The Hearing Committee also recommended that Respondent be placed on a one-year period of unsupervised probation without conditions, finding that supervision was unnecessary because Respondent's "misconduct appears to have arisen from [his] decision to begin to handle appeals," but that he "has now returned to a trial practice where he has no history of misconduct." H.C. Report at 21. The Board disagrees with this recommendation. Respondent attempted to leave trial work based on medical advice that it was too stressful in light of his hypertension. H.C. Report at 10, ¶ 37. Then, during his transition to appellate work, Respondent completely neglected his appeals and disregarded court orders, because in his own words, the appeals "got caught up in the hurly burley of the practice." *Id.* Given that Respondent attempted to leave trial work because of the stress, coupled with his admission that trial pressures caused him to "push" his appellate work aside, (Tr. 126-27),[4] there is the risk of future neglect, with Respondent's return to full-time trial practice. Moreover, the fact that Respondent has sworn off appellate practice, at least for now, is not a basis to forego the

---

[4] "Tr." refers to the transcript of the March 26, 2014 hearing.

sanction otherwise necessary to protect the public, because a license to practice law is not limited.[5] *See In re Roundtree*, 503 A.2d 1215, 1218 n.10 (D.C. 1985). Thus, we recommend a period of probation, with conditions.

Our recommendation is consistent with *Askew*, where the Court imposed probation conditions to "ensure that Ms. Askew has in fact taken all the steps needed to have a properly functioning law practice." *Askew*, 96 A.3d at 60-62. As the Court explained:

> [S]etting up organizational and communication systems is a fundamental element of legal practice. Thus, we perceive these facts [Ms. Askew's failure to adequately organize her practice or to reliably receive mail] not as mitigation but rather as a source of ongoing concern as to Ms. Askew's ability to adequately fulfill her duties as a lawyer.

*Id.* at 59 (citations omitted). The Hearing Committee was satisfied that Respondent had set up the necessary systems after the misconduct at issue, because "Respondent associated with another attorney (Kevin Oliver) for about two-and-a-half years [and] Mr. Oliver provided coverage and administrative employees to assist with paperwork," which helped Respondent better organize his practice.

---

[5] In *Askew*, the Court directed that if not an automatic consequence of her suspension, Ms. Askew be removed from all panel lists for court-appointed counsel in both the Court of Appeals and the Superior Court, without prejudice to her ability to reapply once her term of suspension had expired. *See Askew*, 96 A.2d at 62.

H.C. Report at 10-11, ¶ 39. However, the record indicates that Respondent no longer associates with Mr. Oliver, (*id.*), and it is unclear whether Respondent is positioned to continue his improved organization on his own. *See id.* (finding that "Respondent and Mr. Oliver testified that they are considering sharing office space again").

We recognize that Respondent has made more efforts to improve his practice management than Ms. Askew,[6] but as noted above, the questions about Respondent's ability to manage his practice remain. Given these concerns, the Board recommends that Respondent be placed on probation with the following conditions:

1.      If within 30 days of the date of the Court's order of discipline Respondent has filed with the Board a statement certifying that he accepts the conditions of probation set forth in this Report, all but 60 days of the suspension will be stayed, and Respondent shall be placed on probation for one year. If Respondent has not filed this statement with the Board, the order of suspension shall take effect without further order of the Court. *See In re Stow*, 633 A.2d 782,

---

[6] Respondent "started using multiple calendars and software to provide date reminders and checklists," (H.C. Report at 10-11, ¶ 39), and "currently has approximately fifty open criminal matters pending in D.C. Superior Court, including felony and misdemeanor cases and is not aware of any cases in which he failed to timely file a pleading since 2010." *Id.* at 11, ¶ 41.

782 (D.C. 1993) (per curiam) (suspension stayed on the condition that the respondent certify acceptance of probation conditions); *see also* Board Rule 18.1(a) (same).

2.     During the one-year period of probation, Respondent:

    (a)    shall not commit any other disciplinary rule violations;

    (b)    shall attend 10 hours of Continuing Legal Education classes offered by the D.C. Bar, pre-approved by Bar Counsel, and provide to Bar Counsel proof of attendance at such classes within 30 days of attendance, but no later than 30 days before the expiration of probation;

    (c)    shall undergo an assessment by the D.C. Bar's Director for the Practice Management Advisory Service, or his designee, implement any recommendations he or she may make, and sign a limited waiver permitting that program to confirm compliance with this condition and cooperation with the assessment process.

3.     If Bar Counsel has probable cause to believe that Respondent has violated any of the terms of probation, Bar Counsel may seek to revoke Respondent's probation, pursuant to Board Rule 18.3.

## CONCLUSION

For the reasons set forth herein, the Board recommends that Respondent be suspended from the practice of law for a period of six months, with all but 60 days of the suspension stayed, and that he be placed on probation for a period of one

year, subject to the conditions set forth above. Respondent's attention should be drawn to the provisions regarding his eligibility for reinstatement under D.C. Bar R. XI, § 16(c), including the filing of the required affidavit pursuant to D.C. Bar R. XI, § 14(g). *See In re Slosberg*, 650 A.2d 1329, 1331-33 (D.C. 1994).

BOARD ON PROFESSIONAL RESPONSIBILITY

By:     /TRB/
        Thomas R. Bundy, III

Dated: February 24, 2015

All members of the Board concur in this Report and Recommendation, except J except Jason E. Carter and Mary Lou Soller, who are recused.