*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-BG-370

IN RE BRIGITTE L. ADAMS, RESPONDENT.

A Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 426034)

On Report and Recommendation
of the Board on Professional Responsibility
(Board Docket No. 14-BD-031)
(DDN-505-10, et al.)

(Argued February 15, 2017                    Decided August 30, 2018)

*Brigitte L. Adams*, pro se.

*Elizabeth A. Herman*, Deputy Disciplinary Counsel, with whom *Wallace E. Shipp, Jr.*, Disciplinary Counsel at the time the brief was filed, and *Jennifer P. Lyman*, Senior Assistant Disciplinary Counsel, were on the brief, for the Office of Disciplinary Counsel.

Before GLICKMAN and FISHER, *Associate Judge*s, and WASHINGTON, *Senior Judge*.[*]

PER CURIAM: In 2015, a Hearing Committee ("Committee") of the Board on

---

[*] Judge Washington was Chief Judge at the time of argument. His status changed to Senior Judge on March 20, 2017.

Professional Responsibility ("Board") determined that Brigitte L. Adams ("Respondent") violated multiple Rules of Professional Conduct when she neglected the cases of five Criminal Justice Act ("CJA") clients. The Committee recommended respondent be suspended from the practice of law for six months and that her reinstatement be conditioned on proof of her fitness to practice law.

The Board agreed with a substantial majority of the Committee's findings and conclusions; however, the Board disagreed with the Committee's recommended fitness requirement and the findings underlying that recommendation. The Board, instead, recommended a six-month suspension with all but ninety days stayed, no fitness requirement, and a probation period with supervision and therapy. Disciplinary Counsel disagreed with the Board's recommendation and noted its objection with this court. Respondent requests that we adopt the recommendations of the Board.

For the reasons stated below, we agree with the Board that a fitness requirement is not appropriate in this matter. However, we are not convinced that the Board's sanction recommendations are sufficient to protect the integrity of the Bar. Therefore, we impose a lengthier probation period, with practice monitoring should respondent resume her practice during the probationary period, and a few

additional conditions recommended by the Board and discussed below.

## I. Procedural Background

Brigitte L. Adams has been a member of the District of Columbia Bar since 1990. Respondent was brought to the attention of Disciplinary Counsel after she abandoned the cases of five indigent criminal defendants, whom she was assigned to represent on appeal under the Criminal Justice Act from 2008 until 2010. In regard to the five client matters, Disciplinary Counsel filed a Specification of Charges, which alleged respondent violated numerous rules of conduct: Rules 1.1 (a) and (b) (failing to represent clients competently, and with skill and care); Rules 1.3 (a), (b)(1), and (c) (failing to diligently and zealously represent clients, intentionally failing to seek clients' lawful objectives, and failing to act with reasonable promptness); Rule 1.4 (a) (failing to keep clients reasonably informed and failing to comply with reasonable requests for information); Rule 1.4 (b) (failing to explain a matter to permit clients to make informed decisions); Rule 1.16 (d) (failing to protect clients' interests, in connection with termination of representation); Rule 3.4 (c) (disobeying the rules of a tribunal); Rule 8.4 (d) (engaging in conduct that seriously interferes with the administration of justice); and D.C. Bar R. XI, §§ 2 (b)(3) and 2 (b)(4) (failing to comply with orders of the

Court and the Board and failing to respond to an inquiry from the Court or the Board in connection with a disciplinary proceeding).  Respondent was also alleged to have violated Rule 5.5 (a) for practicing law in a jurisdiction where doing so violates the regulation of the legal profession.

The intricacies of respondent's alleged misconduct are not at issue. Respondent, in fact, admitted nearly all of the fifty-two factual allegations in Disciplinary Counsel's Specification of Charges and only disputed the alleged violations of Rules 3.4 (c) and 5.5 (a).  Notwithstanding, a summation of her alleged misconduct is appropriate.[1]  Beginning in 2001, respondent was placed on the District of Columbia Court of Appeals' CJA panel of attorneys willing to accept appointments to represent indigent criminal defendants in appellate matters. From 2008 to 2010, respondent was appointed to represent five separate criminal defendants.  Respondent, however, in almost every respect failed to communicate with these five clients, pursue her clients' interests, file briefs on their behalf, or respond to Court orders.  Instead, respondent filed numerous motions for extensions of time in which to file briefs but, ultimately, ignored twenty-six separate Court orders to file briefs.  We were forced to vacate her appointment in the five cases in late 2010 and ordered respondent to turn over her files to

---

[1] Respondent stipulated to the following facts.

successor counsel.

At this point, Disciplinary Counsel had become aware of respondent's misconduct. It sent various inquiries and orders to respond, all of which went unanswered. When respondent failed to comply with a court order enforcing Disciplinary Counsel's subpoena for her files, the Superior Court held a hearing on our referral of respondent's contempt. Respondent failed to appear and a bench warrant was issued for her arrest. Numerous unsuccessful attempts were made to serve respondent the warrant. Finally on May 30, 2012, we ordered respondent's license temporarily suspended based upon her failure to respond to the Board's order.

On August 7, 2012, respondent appeared before a Superior Court judge as counsel for Eutelsat America Corporation. The court refused to let her proceed in light of our order of suspension. Shortly thereafter, respondent's counsel sent Disciplinary Counsel a letter responding to the allegations of unethical conduct. From this point on, respondent fully cooperated with Disciplinary Counsel and stipulated to all the relevant facts. The Superior Court quashed the bench warrant, and we vacated the order of temporary suspension.

On August 27, 2014, the Hearing Committee held an evidentiary hearing to determine whether respondent violated Rules 3.4 (c) and 5.5 (a) — she had already stipulated to the remaining violations — and to hear evidence to mitigate her misconduct. Respondent presented three witnesses and her own testimony of her emotional and mental condition underlying these events. Specifically, respondent claimed that she began having difficulties working on her criminal appeals after she handled a murder appeal, in which her client was convicted of a particularly egregious murder and expressed no remorse. Working on this case upset respondent and caused her "to shut down." She testified that those negative feelings resurfaced when she began receiving phone calls from one of her CJA clients, who was also convicted of committing a murder. Respondent "would sit down with the transcripts and [she] would sit there and not be able to open it." The Hearing Committee accepted as credible respondent's testimony regarding her murder cases that were difficult for her emotionally and caused her to shut down. Nevertheless, the Committee recognized that these difficulties did not render respondent incapable of conducting her civil practice, keeping up with deadlines in her CJA cases, or filing motions for extension of time to file briefs.[2]

---

[2] During this entire period, respondent maintained a civil practice until she became a full-time employee for Eutelsat Americorp.

Respondent presented the testimony of Nickie Irish, a senior counselor at the D.C. Bar Lawyer Assistance Program, who testified regarding respondent's rehabilitation efforts. Ms. Irish evaluated respondent over the course of four meetings and observed that respondent reported anxiety and avoidance behaviors with her CJA criminal cases. Ms. Irish recommended that respondent seek psychological treatment for her condition and referred respondent to Dr. Ronald Kimball. Stefan Lopatkiewicz, respondent's former supervisor and mentor, also testified regarding her shut down and failure to open any of her communications from the court or Disciplinary Counsel. Finally, Dr. Ronald Kimball testified regarding his psychological evaluation of respondent, her emotional difficulties associated with her criminal cases, and her ability to successfully practice law in the future. Dr. Kimball acknowledged that respondent's judgment was intact, she was quite capable of working as an attorney, and that her "borderline dependent personality features" did not rise to the level requiring a clinical diagnosis. Dr. Kimball concluded that there was no reason why respondent should not continue to operate as a licensed attorney.

The Hearing Committee concluded that Disciplinary Counsel had met its burden of proving each of respondent's alleged violations with the exception of the D.C. Bar Rule XI, § 2 (b)(4) violation for failing to respond to an inquiry from the

Board. The Hearing Committee recommended respondent be suspended for six months from the practice of law and be subjected to a fitness requirement before she could be readmitted to the bar. The Committee relied on three of its findings as support for the imposition of a fitness requirement: (1) respondent's testimony that she did not open her mail, receive calls, or review her answering machine between 2009-12 was incredible and inconsistent with the record; (2) respondent filed motions to extend the time for filing a brief with no intention of actually filing the briefs; and (3) respondent acted with "callousness" in destroying client files rather than transmitting those files to successor counsel.

The Board, however, took exception to the Hearing Committee's findings undergirding its recommended fitness requirement concluding that the findings were unsupported by substantial evidence in the record and were inconsistent with other evidence. Therefore, the Board rejected the Committee's recommendation that a fitness requirement be imposed and instead recommended that ninety days of respondent's six-month suspension be stayed during a one-year period of supervised probation with conditions to ensure that she continue to receive appropriate psychological treatment. The Board further recommended that respondent be removed from all panel lists for court-appointed counsel, without prejudice to her ability to reapply following her suspension and probation.

Disciplinary Counsel disagrees with the Board's recommendation and noted its objection with this court.

## II. Disputed Factual Findings

In its Report and Recommendation, the Board determined that the three findings relied upon by the Committee to impose a fitness requirement amounted to a general attack on respondent's credibility. The Board, in reviewing the report and recommendation of the Committee, determined that the Committee's findings, in this regard were too conclusory and were undermined by other evidence in the record. After a thorough review of the record, and after giving the required deference to the Board's ultimate findings, we agree that, under the circumstances here, a fitness requirement is unwarranted.

First, we "accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record." D.C. Bar R. XI, § 9 (h)(1); *see also In re Temple*, 629 A.2d 1203, 1208 (D.C. 1993) ("[T]he Board has the power to make its own factual findings and forward them to the court [of appeals] with a recommendation"). The Board, in overruling the findings of the Committee, fully supported its findings with evidence in the record. First, when contrasted with the

conclusory findings of the Committee, and despite the Disciplinary Counsel's subsequent efforts to reinforce the Committee's findings, we are persuaded that the Board's findings should be accorded the appropriate level of deference. Second, the contested findings relate to respondent's "intent" and "state of mind" in filing requests for extensions of time to file briefs and in destroying client files. While those findings are probative as to the appropriate level of discipline for respondent's prior misconduct, we find them less probative on the question of whether a fitness requirement is necessary to protect members of the public from future misconduct.

### III. Disciplinary Action

We must impose the discipline recommended by the Board "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9 (h)(1). The Board's recommended sanction thus "comes to the court with a strong presumption in favor of its imposition." *In re Hallmark*, 831 A.2d 366, 371 (D.C. 2003). "Generally speaking, if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed." *Id*. (quoting *In re Lopes*, 770 A.2d 561, 567 (D.C. 2001)). "Although we must give considerable deference

to the Board's recommendations in these matters, the responsibility for imposing sanctions rests with this court in the first instance." *In re Temple*, 629 A.2d at 1207. "The discipline we impose should serve not only to maintain the integrity of the profession and to protect the public and the courts, but also to deter other attorneys from engaging in similar misconduct." *In re Martin*, 67 A.3d 1032, 1053 (D.C. 2013) (quoting *In re Scanio*, 919 A.2d 1137, 1144 (D.C. 2007)).

## A.  Length of Suspension

We first address the appropriate length of suspension.  Both the Hearing Committee and the Board recommend a period of suspension of six months.  The distinction is that in lieu of the fitness requirement recommended by the Hearing Committee, the Board recommended that ninety days of the six-month suspension be stayed and that respondent be placed on probation subject to supervision and continued therapy.  Therefore, both the Hearing Committee and the Board are recommending a six-month suspension for respondent's conduct in this case.  Because the Committee and the Board agree on the length of the suspension, we give heightened deference to that recommendation.  *See In re Boykins*, 999 A.2d 166, 173 (D.C. 2010); *see also* D.C. Bar R. XI, § 9 (h)(1).

After reviewing our prior decisions in similar disciplinary cases, it appears that the recommended suspension is not outside the permissible range of previous suspensions for comparable conduct. Therefore, we are satisfied that a suspension from the practice of law for six months, to begin from the date of the issuance of this decision, is appropriate.[3]  *See In re Murdter*, 131 A.3d 355, 357-58 (D.C. 2016) (imposing a six-month suspension with sixty days stayed in favor of a probation for one year, where Murdter accepted and then ignored appointment in five CJA appeals, failed to open his mail, and was convicted of two counts of criminal contempt); *In re Askew*, 96 A.3d 52, 59-62 (D.C. 2014) (imposing a six-month suspension with all but sixty days stayed in favor of probation for one year, where Askew consciously disregarded one CJA appeal and failed to transfer case files promptly to successor counsel).

## B.  Fitness Requirement

That brings us to the central issue we must decide in this appeal:  whether to impose a fitness requirement or instead order other assurances that respondent's conditions are met as part of the discipline in this case necessary to protect the

---

[3]  As discussed below, a portion of this sentence will be suspended pursuant to a probationary period with conditions.

public. In order to justify the imposition of a fitness requirement as a condition of reinstatement, "the record in the disciplinary proceeding must contain clear and convincing evidence that casts a serious doubt upon the attorney's continuing fitness to practice law." *In re Cater*, 887 A.2d 1, 24 (D.C. 2005). Serious doubt is a real skepticism, not just a lack of certainty. *Id.* Proof of serious doubt involves "more than no confidence that a Respondent will not engage in similar conduct in the future." *In re Guberman*, 978 A.2d 200, 213 (D.C. 2009) (brackets and internal quotation marks omitted). "[W]hile the decision to suspend an attorney for misconduct turns largely on the determination of historical facts, the decision to impose a fitness requirement turns on a partly subjective, predictive evaluation of the attorney's character and ability." *In re Cater*, 887 A.2d at 22.

Here, the Committee found that respondent's case warranted the imposition of a fitness requirement because of her callous and egregious disregard for the cases of five indigent clients. Although she explained her misconduct by stating that she "shut down" psychologically because of the stress caused by her criminal law practice, respondent conceded before the Committee that her "shut down" was not a complete shutdown. She acknowledged being able to carry on a civil practice throughout the same period and, therefore, the Committee found that she had the capacity, but failed, to represent her clients faithfully, respond to court orders, and

take appropriate steps recommended to withdraw from her assigned CJA cases.

The Board rejected the Committee's recommended sanction because it read the Hearing Committee's report as inviting it to impose a fitness requirement based solely on the egregious nature of the respondent's conduct, and her callous disregard of her clients' interests. The Board rejected this justification because in cases with equally egregious misconduct, where there is nothing in the record to give reason to think that misconduct will be repeated, no fitness requirement has been imposed, even if we cannot say with certainty that the respondent will not engage in similar misconduct upon a return to practice. *See In re Guberman*, 978 A.2d at 213; *see generally In re Murdter*, 131 A.3d 355; *In re Askew*, 96 A.3d 52.

In rejecting the Committee's analysis that the respondent's conduct alone supports the imposition of a fitness requirement, the Board also relied on respondent's extensive efforts to remedy and prevent a recurrence of her mental "shut down" and consequent misconduct. Specifically, the Board cited to the evaluation performed by Ms. Irish of the D.C. Bar's Lawyer Assistance Program and Dr. Kimball, a psychologist to whom she had been referred and with whom respondent participated in at least twenty therapy sessions. Dr. Kimball testified that respondent had made substantial progress in recognizing and addressing the

cause for her mental shut down, and that he believed respondent's "judgment ha[d] improved and she's very unlikely to get herself into a situation like this again." Based largely on this evidence, the Board concluded that "Disciplinary Counsel failed by a wide margin to meet its burden of proof to show, by clear and convincing evidence, that there is a 'serious doubt' as to Respondent's current and future fitness to practice law."

Nonetheless, Disciplinary Counsel stands by its arguments that a fitness requirement is necessary to protect the public and the integrity of the court. Disciplinary Counsel argues that respondent has not "own[ed] up" to the full scope of her misconduct, and that a fitness requirement is therefore necessary. As support for its recommendation, Disciplinary Counsel relies on this court's opinions in *In re Delate*, 579 A.2d 1177 (D.C. 1990), and *In re Bradley*, 70 A.3d 1189 (D.C. 2013). However, these cases are easily distinguishable from the present case. *In re Delate* involved an attorney who failed to present any evidence or argument to the Hearing Committee or the Board in meaningful explanation of her misconduct. 579 A.2d at 1180. Likewise, *In re Bradley* involved an attorney who disputed the allegations of misconduct against her and, by her own admission, gave false testimony before a hearing committee. 70 A.3d at 1192-93. While, Disciplinary Counsel may find respondent's mitigating evidence less than

satisfying, here, unlike in *Delate* and *Bradley*, the respondent affirmatively acknowledged her misconduct and offered an explanation for her failures to meet our standards of professional conduct. Therefore, its reliance on those prior decisions of our court to justify a fitness requirement in this case is misplaced.

However, Disciplinary Counsel also posits that the seriousness of respondent's misconduct has a predictive value and that the Board failed to consider all of the aggravating factors present in this case, and weigh them appropriately against respondent's rehabilitation evidence. While we agree that the severity of a lawyer's misconduct can support the imposition of a fitness requirement, it is only where the record contains clear and convincing evidence that casts a serious doubt upon the attorney's *continuing* fitness to practice law that it is appropriate. *See In re Cater*, 887 A.2d at 24. Here, we are satisfied that respondent accepted her responsibility for the misconduct, stipulated to almost all of the charges, and took appropriate steps to ensure, to the degree possible, that such misconduct would not occur again. We agree with the Board that her acknowledgement of her wrongdoings, and the remedial measures she embraced to prevent a re-occurrence of this conduct in the future recommends against assigning any predictive value to her past misconduct.

We acknowledge that there is no bright line test for determining whether and when an attorney is fit to practice law. In prior cases, we have tried to distinguish between those circumstances where a fitness requirement is appropriate and where it is not. *See In re Guberman*, 978 A.2d at 211. The detailed examination by the *Guberman* court need not be repeated here; however, the court in that case observed that this court historically has imposed a fitness requirement when an attorney shows a lack of remorse; failed to cooperate or engaged in questionable conduct during the disciplinary process; engaged in repeated neglect of client matters; engaged in repeated misconduct of the type for which the attorney was previously disciplined; or failed to resolve misconduct attributed to her personal problems and pressures. Conversely, the court observed that we generally do not impose a fitness requirement when the misconduct involves a response to the pressure of the moment or unique situations that are unlikely to be repeated. *Id*.

Here, while respondent's misconduct was serious, since learning of her suspension respondent has fully cooperated with the disciplinary process. Remorse for her misconduct was evident during the disciplinary proceeding and during oral arguments before this court. She has also taken numerous steps to resolve the personal problems and pressures that contributed to her misconduct. Finally, respondent's decision to transition into a purely civil practice to eliminate the

trigger that led to her shut down, reduces the likelihood that a situation like this will be repeated. For these reasons, this case is distinguishable from others where we have imposed a fitness requirement.

## C. Future Monitoring

Despite our belief that a fitness requirement is not warranted here, we do agree with Disciplinary Counsel that some sort of monitoring and support should be required of and given to respondent. Respondent neglected the cases of five indigent criminal appellants, filed unnecessary requests for extensions of time to file briefs, failed to file briefs, avoided official correspondence from Disciplinary Counsel and this court, and destroyed client files. Although respondent has since sought mental health treatment for her "shut down," fully cooperated with Disciplinary Counsel, and accepted responsibility for her actions, we feel that some manner of assurance must be instituted to ensure that respondent continues to take steps to address the issues that led to her misconduct.

In the past, we have encouraged the use of a practice monitor in lieu of imposing a fitness requirement where a fitness requirement was not "the most practical and effective method of protecting the public and advancing the goals of

attorney discipline" and "to help respondents remedy specific practice deficiencies that were at the root of their disciplinary violations."[4] *In re Edwards*, 870 A.2d 90, 98-99 (D.C. 2005); *see also In re Cater*, 887 A.2d at 23 n.27. *Compare In re Vohra*, 762 A.2d 544 (D.C. 2000) (ordering practice monitor to supervise attorney's professional conduct and other conditions relating to the attorney's mental health issues), *and In re Pullings*, 724 A.2d 600, 603 (D.C. 1999) (ordering one-year probation with supervision by a practice monitor for failure to properly represent a client), *with In re Boykins*, 999 A.2d at 174 (recognizing an attorney's misconduct of negligent misappropriation and misleading of Disciplinary Counsel during its investigation directly weighed against the use of a practice monitor). Further, the "[f]ailure to cooperate with practice monitoring then exposes the attorney to revocation of probation and the imposition of any other permissible disciplinary sanction to the extent stated in the order imposing probation." *In re Edwards*, 870 A.2d at 98 (citing as example *In re Larsen*, 633 A.2d 797 (D.C. 1993)).

While not appropriate in every case, respondent's unique mental avoidance

---

[4] "We also may require a respondent to cooperate with a practice monitor while on suspension as a condition of reinstatement." *In re Edwards*, 870 A.2d at 98 (citing D.C. Bar R. XI, § 3 (b) ("authorizing the imposition of 'any other reasonable condition'")).

issues, which only manifested in her criminal practice, make a practice monitor appropriate in lieu of a fitness requirement. By overseeing her current practice, the monitor can "help assure that respondent not only understands but also fulfills her ethical obligations." *In re Edwards*, 870 A.2d at 99. The monitor shall work with respondent to ensure that she has systems in place to file court documents in a timely manner and help avoid unnecessary delays and procrastination. Further, the practice monitor will be in a position to observe respondent's emotional response to the pressures of her legal practice. If respondent fails to follow proper procedures or otherwise engages in unprofessional conduct, the monitor can sound an early alarm. This requirement will be in addition to the conditions recommended by the Board.[5]

While we agree with the Board that a probationary period in lieu of a fitness requirement is appropriate in this case, we believe the gravity of respondent's actions as well as the need to protect the public require a longer period of probation than the Board recommended. Accordingly, all but ninety days of respondent's suspension will be stayed in favor of an eighteen-month probation period. *See In*

---

[5] The Board recommended that respondent (1) continue to engage and comply with the D.C. Bar Lawyer Assistance Program for monitoring and treatment, and (2) be removed from all panel lists for court-appointed counsel, without prejudice to her ability to reapply.

*re Peek*, 565 A.2d 627, 634 (D.C. 1989) ("[W]e cannot conclude that a respondent attorney will be aggrieved by a long probationary term that affords an obvious advantage:  the continuation or early resumption of a law practice that otherwise would be suspended"); *see also In re Elgin*, 918 A.2d 362, 376 (D.C. 2007) ("[O]ur purpose in conducting disciplinary proceedings and imposing sanctions is not to punish the attorney; rather, it is to offer the desired protection by assuring the continued or restored fitness of an attorney to practice law") (quoting *In re Bettis*, 855 A.2d 282, 287 (D.C. 2004)).  If respondent decides to resume the practice of law during her probationary period, a practice monitor will be provided to her by the Board.  The practice monitor shall ensure that respondent has processes in place to prevent a reoccurrence of the violations that led to this disciplinary proceeding.  Failure to cooperate shall constitute a violation of her probation that will subject respondent to revocation of probation and the imposition of a period of suspension of ninety days, with the additional requirement that she furnish proof of fitness to practice as a condition of her reinstatement thereafter.

## IV.  Conclusion

The  integrity  of  the  bar  is  of  the  utmost  importance  to  this  court.

Respondent's actions fell far below the standard set for attorneys, severely hindered five indigent criminal appeals, and undermined the reputation of our CJA panel system. That said, we are satisfied that respondent has acknowledged the severity of her misconduct and that she has taken appropriate steps to prevent its future occurrence to the degree necessary to discourage the imposition of a fitness requirement. However, a period of probation is appropriate so that we can monitor respondent's efforts to fully remedy the causes of her past transgressions.

Therefore, it is hereby ordered that respondent is suspended from the practice of law for a period of six months, all but ninety days of which is stayed in favor of an eighteen-month probation period, with the same probation conditions recommended by the Board, including that respondent continue to engage and comply with the D.C. Bar Lawyer Assistance Program for monitoring and treatment. Further, Respondent is removed from all panel lists for court-appointed counsel in Superior Court and the Court of Appeals. Respondent's attention is drawn to the reinstatement provisions under D.C. Bar R. XI, § 16 (c), including the filing of the affidavit required under D.C. Bar R. XI, § 14 (g).

*So ordered.*