*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 23-BG-0478 & 24-BG-0301

IN RE NELSON GONZALEZ, RESPONDENT.

A Member of the Bar of
the District of Columbia Court of Appeals
(Bar Registration No. 465407)
(Disciplinary Docket Nos. 2023-D044 & 2024-D052)
(Board Docket No. 23-BD-028)

(Argued February 22, 2024[*])                    Decided July 25, 2024)

*Nelson Gonzalez*, pro se.

*William R. Ross*, Assistant Disciplinary Counsel, with whom *Hamilton P. Fox, III*, Disciplinary Counsel, was on the Statement Regarding Reciprocal Discipline and Statement Regarding Eligibility to Seek Reinstatement, for the Office of Disciplinary Counsel.

*Michael J. Adams*, Assistant Executive Attorney, filed a Statement on Behalf of the Board on Professional Responsibility.

Before EASTERLY and MCLEESE, *Associate Judges*, and THOMPSON, *Senior Judge*.

Opinion for the court by *Senior Judge* THOMPSON. Judges EASTERLY and MCLEESE do not join in section II.C. of the opinion.

---

[*] We heard oral argument in Case No. 23-BG-0478 on February 22, 2024. Case No. 24-BG-0301 was filed March 27, 2024, and the matters were consolidated for all purposes on May 20, 2024. After supplemental briefing, both are now ready to be decided.

Concurring opinion by *Associate Judge* MCLEESE, in which *Associate Judge* EASTERLY joins, at page 27.

THOMPSON, *Senior Judge*: Effective April 11, 2023, the Supreme Court of New Jersey suspended respondent Nelson Gonzalez from the practice of law "for a period of six months, and until the further [o]rder of the [c]ourt[.]" On June 16, 2023, in case number 23-BG-478, this court suspended respondent on an interim basis and ordered him to show cause "why he should not be suspended from the practice of law for six months with a fitness requirement in the District of Columbia, in reciprocity with the Supreme Court of New Jersey." In his response, respondent did not oppose a six-month suspension, but requested that suspension in the District of Columbia run concurrently with his suspension in New Jersey and asked for "an immediate restoration to practice of law in D.C. once the [New Jersey] suspension period has expired." Noting that respondent had filed an affidavit complying with District of Columbia Bar R. XI, § 14, our Office of Disciplinary Counsel ("ODC") did not oppose having a D.C. suspension run from the date of the New Jersey suspension, but asked that respondent's reinstatement to practice in the District of Columbia be conditioned on proof of his reinstatement in New Jersey and proof of his fitness to practice (i.e., satisfaction of a fitness requirement).

Prior to our February 22, 2024, oral argument in case number 23-BG-478, respondent was reinstated in New Jersey.[1]  Subsequent to our oral argument, however, and effective April 21, 2024, the Supreme Court of New Jersey once again suspended him, this time "for a period of three months and until further order of the [c]ourt[.]"  In response to this court's order that respondent show cause why he should not be reciprocally suspended based on that additional disciplinary action in New Jersey, respondent asked that no additional three-month suspension be added to his interim suspension, and he continued to argue that no fitness requirement is warranted.  ODC asked for a three-month suspension, running nunc pro tunc to the effective date of respondent's New Jersey suspension, and again requested that respondent's reinstatement to practice in the District of Columbia be conditioned on proof of his reinstatement in New Jersey and proof of his fitness to practice.  The parties agreed that the two reciprocal discipline matters should be consolidated, and on May 20, 2024, we issued an order consolidating them for all purposes.

For the reasons discussed below, we conclude that an aggregate nine-month suspension is the appropriate sanction in these consolidated cases.  However, given respondent's interim suspensions, the nine-month suspension period will have run

---

[1] We hereby grant ODC's unopposed motion to supplement the record with the order of the Supreme Court of New Jersey reinstating respondent.

by the publication date of this opinion, essentially mooting the parties' dispute about whether a second suspension is warranted in case number 24-BG-301. The primary issue that remains is whether, on the present record, we should impose, as a condition on respondent's reinstatement to practice in the District of Columbia, a separate requirement that he prove his fitness. As explained below, we conclude that a fitness requirement is warranted and we impose one.

## I.

In addition to his admission to the bars of the District of Columbia and New Jersey, respondent has been admitted to practice before various federal agencies that handle immigration-related matters and before two federal district courts in New York. He has advised the court in his briefs that he has had no clients in the District of Columbia, but states that, under 8 C.F.R. § 1001.1(f), his continued suspension will "prohibit [him] from practicing and appearing before the Immigration Courts, Department of Homeland Security, and the Board of Immigration Appeals[.]"

The reciprocal-discipline matters before us arise from respondent's fourth and fifth disciplinary matters in New Jersey. Respondent's prior disciplinary history provides context for the current matters, and so we briefly recount it below.

## A. Respondent's Disciplinary History

In the first matter, the Supreme Court of New Jersey dismissed an ethics complaint against respondent, agreeing with the New Jersey Disciplinary Review Board (the "DRB") that there was no clear and convincing evidence of unethical conduct. *See In re Gonzalez*, 164 A.3d 1060, 1060 (N.J. 2017) (order) (*Gonzalez I*). However, the court found respondent in violation of New Jersey Rule of Professional Conduct 8.1(b) for his failure to answer the ethics complaint. *Id.* The court declined to impose discipline for that violation, citing the fact that respondent had "provided representation to the client and obtained the relief sought[.]" *Id.*

The second New Jersey disciplinary matter was based on or related to conduct that occurred between 2012 and 2014 in violation of New Jersey Rules of Professional Conduct 1.1(a) (gross neglect), 1.3 (lack of diligence), 1.4(b) (failure to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information), 1.4(c) (failure to explain a matter to client), 1.15(a) (failure to safeguard funds, negligent misappropriation), 1.15(d) (recordkeeping), 3.2 (failure to expedite litigation), 3.4(d) (failure to comply with reasonable discovery requests), 5.3(a) (failure to supervise non-lawyer staff), 8.1(a) (false statement of material fact to a disciplinary authority), and 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), as

well as on an initial failure to cooperate with disciplinary authorities that occurred between 2015 and 2016. *See In re Gonzalez*, 230 A.3d 205, 205 (N.J. 2020) (order) (*Gonzalez II*). The underlying misconduct occurred in a variety matters affecting several clients. The DRB found that "[t]he overarching theme" in the matters involved in *Gonzalez II* was "respondent's improper and unreasonable reliance on . . . his wife and employee[] to handle matters in his law office."[2] The DRB further found in its December 4, 2019, decision that in light of respondent's knowledge of his wife's deceitfulness by September 2014, it was unreasonable for him "to allow her continued access to his law office[.]" The New Jersey Supreme Court imposed a three-month suspension, effective May 7, 2020, and ordered that respondent "shall not employ his wife or give her access to his law practice or his attorney accounts, books and records and shall provide proof thereof to the Office of Attorney Ethics prior to reinstatement to practice[.]" *Id.* at 206.[3] In the (successful) petition for reinstatement to the New Jersey Bar that respondent submitted in July 2020, he certified that his wife no longer had any association

---

[2] Respondent employed his wife as an office manager and paralegal, and she assisted in communications with respondent's majority Spanish-speaking clientele.

[3] Our court imposed the substantially different discipline of a six-month suspension with no fitness requirement. *See In re Gonzalez*, 282 A.3d 1074, 1074 (D.C. 2022) (order).

with his law office, no longer did any legal work for his practice, and had no access to his attorney accounts or records.

In the third New Jersey disciplinary matter, the Supreme Court of New Jersey censured respondent for violating New Jersey Rules of Professional Conduct 1.3 (lack of diligence), 1.4(b) (failure to keep client reasonably informed about the status of a matter and to promptly comply with reasonable requests for information), 1.5(b) (failure to set forth in writing the basis or rate of the fee), and 8.1(b) (failure to cooperate with disciplinary authorities). *See In re Gonzalez*, 238 A.3d 1126, 1126 (N.J. 2020) (order) (*Gonzalez III*). The underlying facts were that respondent represented two juvenile asylum-seekers but failed to appear at their removal hearing, resulting in an immigration court ordering the boys' removal from the United States. Respondent remained counsel of record for six years without following up until a new attorney took over the matter and filed a motion for reconsideration. (It is unclear to us whether the motion was successful, or whether the boys were in fact removed.) The DRB found respondent's explanation for failing to file an answer to the disciplinary complaint (essentially, that he had not received it in the mail) "woefully inadequate." The DRB also rejected respondent's arguments that the clients' grievances were unsubstantiated, finding that respondent "simply blamed his minor clients for their failure to attend the

hearing" and provided no explanation for his own absence from the hearing without leave of court.

## B. Case Number 23-BG-478

Case number 23-BG-478, the first of the reciprocal matters currently before us, arose from complaints filed with the DRB by three of respondent's former clients, resulting in the discipline the New Jersey Supreme Court imposed in *In re Gonzalez*, 290 A.3d 180 (N.J. 2023) (order) (*Gonzalez IV*). After an evidentiary hearing, the DRB found that respondent violated New Jersey Rules of Professional Conduct 1.1(a) (gross neglect), 1.3 (lack of diligence), 1.4(b) (failure to communicate with client), 1.5(b) (failure to set forth in writing the basis or rate of the fee), 3.2 (failure to expedite litigation), 5.3 (failure to supervise non-lawyer employees), 7.1(a) (misleading communication about the lawyer or the lawyer's services), 7.5(a) (improper use of professional designation), and 8.1(b) (failure to cooperate with disciplinary authorities). *Id.* at 180-81. The facts established that, from about 2009 to 2017, respondent failed to communicate with his clients, keep them sufficiently informed about their cases, diligently handle their matters, and communicate with third parties consistently. In addition, respondent failed to advance his clients' matters for prolonged periods, extending over three years in one matter and almost five in another. In one matter, he failed to prosecute a civil

action, resulting in dismissal of the complaint, and then neglected to inform the client that his case had been dismissed. Respondent's wife then forgot to calendar the return date on a motion to reinstate the complaint, resulting in respondent's failure to appear on the return date and the motion's being denied. In another matter, respondent failed to file a workers' compensation claim, despite the client's understanding that respondent had been retained to do so, resulting in denial of the claim. Respondent's neglect of client matters led to civil judgments against him, which he later discharged through bankruptcy proceedings.

The DRB found that respondent had failed to supervise his non-lawyer staff, especially his wife, whom he continued to employ even after he became aware of her extensive and "egregious" pattern of deceitful conduct that included concealing mail, lying to respondent about reconciliations of his trust account, falsifying bank statements, and issuing checks without respondent's authorization. In one of the client matters, respondent's wife fabricated a settlement offer, had the client sign a false release for settlement funds, fabricated a court order purporting to reinstate the client's long-dismissed complaint (forging the signature of the judge), and forged a letter purporting to be from an insurer confirming a settlement offer.

Just as it found in the matter that was resolved as *Gonzalez II*, the DRB found as to the consolidated matters in 23-BG-478 that "[t]he overarching theme

. . . [wa]s respondent's improper and unreasonable reliance on . . . his wife and employee[] to handle matters in his law office[.]" The DRB further found that while there was a break in his wife's employment while she "engaged [a] psychologist," her employment in respondent's law office did not end until after February 2020. In addition, the DRB found many aspects of respondent's testimony not to be credible, including, for example, his claims that he had not seen emails from a client and that "he had no reason to doubt that [his wife] had been telling him the truth."

Respondent stipulated that he failed to promptly cooperate with disciplinary authorities by initially ignoring the Ethics Committee's written requests for information and by initially failing to reply to ethics grievances in two cases.[4] In addition, respondent stipulated to having improperly identified himself as licensed to practice in the District of Columbia despite an administrative suspension from 2015 to 2018 for non-payment of dues.

In recommending a six-month suspension as the appropriate sanction in *Gonzalez IV*, the DRB noted, as aggravating factors, respondent's prior discipline, the harm respondent's misconduct caused to clients who had limited English

---

[4] Respondent had twice represented that he would respond by a given date and then failed to do so.

proficiency, and his failure to show remorse for his conduct. The DRB noted that he "deflect[ed] blame to his illiterate client, his staff, and the courts" and observed that "[i]n all his matters, [respondent] consistently has attributed his misconduct to his staff and, particularly, his wife[.]" The DRB found as a limited mitigating factor that "respondent's misconduct was not for financial gain, other than to earn his respective fees." In addition, the DRB noted that some of respondent's *Gonzalez IV* misconduct had "occurred during the same period as the misconduct in respondent's prior disciplinary proceedings[,]" such that "it cannot be said that he failed to learn from his prior discipline."

Accepting the DRB's findings and recommendations, the New Jersey Supreme Court imposed a six-month suspension effective April 11, 2023, in *Gonzalez IV*. 290 A.3d at 181. Respondent was reinstated in New Jersey on December 7, 2023, after serving that suspension, with the condition that he practice under the supervision of a practice monitor, a condition the DRB had recommended in order "to protect the public[.]"

## C. Case Number 24-BG-301

Case number 24-BG-301, the second of the two reciprocal matters currently before us, is based upon respondent's lack of candor between December 2017 and December 2019 in connection with *Gonzalez II*, which lack of candor resulted in

the discipline the Supreme Court of New Jersey imposed in *In re Gonzalez*, 310 A.3d 686 (N.J. 2024) (order) (*Gonzalez V*). In a DRB disciplinary hearing held in October 2017 in the matter that was resolved as *Gonzalez II*, respondent testified that he had dismissed his wife from employment in March 2016 and "highlighted" this "as one of several steps taken to remediate the deficiencies alleged in th[e] complaint." But—the DRB found in the matter that culminated in *Gonzalez V*—in December 2017, less than two months after the October 2017 hearing, respondent re-employed his wife and then failed to disclose that fact when the *Gonzalez II* disciplinary hearing re-convened in January 2018. When respondent's counsel was asked during a June 2019 argument before the DRB in the same matter about when respondent had "ultimately let [his wife] go from his employment," counsel responded, "I believe sometime in early March of 2016." The DRB found in its report that culminated in *Gonzalez V* that "[r]espondent's failure to advise us during that oral argument that he had reemployed [his wife] in December 2017, and that she had continued working for him since that time, left us with the misimpression that she was no longer employed in his office."

Respondent testified in the *Gonzalez V* hearing that his wife had last worked for him in February or March 2020, and he insisted that he had never meant to hide her re-employment and realized only with the benefit of hindsight that her re-employment should have been disclosed "whether the question was asked or

not[.]"[5] The DRB found "incredible respondent's claim that he did not know that [his wife's] rehiring should be disclosed[,]" given that her continued employment was highly relevant to the charges and to respondent's mitigation argument that he had remedied the conditions leading to his prior misconduct. Noting that respondent had "seldom let pass an opportunity to fault [his wife] for pervasive unprofessionalism in his practice" and had consistently blamed her "for the circumstances and incidents that had given rise to the charges against him[,]" the DRB concluded that "respondent knowingly fostered . . . , as a potential mitigating factor, the continuing misapprehension that he had once and for all [by March 2016] addressed [his wife's] pervasive undermining of his practice."

In determining the appropriate sanction to recommend, the DRB considered in mitigation respondent's renewed commitment to comporting himself in accordance with ethical rules, his promise that similar misconduct would not occur, and his assurance that his wife was no longer allowed access to his offices. Nonetheless, the DRB found that "respondent's significant history of repeating misconduct, despite taking corrective steps, preclude[d] [it] from weighing these alleged remedial measures as significant mitigation." In aggravation, the DRB

---

[5] Respondent eventually stipulated that he "had a duty to correct the misimpressions" he gave New Jersey disciplinary authorities regarding his wife's employment at his office.

noted respondent's effort to shift responsibility to his prior counsel and his "prolonged misleading of disciplinary authorities" that "constitute[d] a distinct course of dishonesty" that had not yet been addressed in the prior disciplinary proceedings. The DRB recommended a three-month suspension, and the Supreme Court of New Jersey adopted its recommendation. *See Gonzalez V*, 310 A.3d at 686-87.

## II.

D.C. Bar R. XI, § 11(c) states that "[r]eciprocal discipline may be imposed whenever an attorney has been disbarred, suspended, or placed on probation by another disciplining court." *Id.* It provides further that "[r]eciprocal discipline shall be imposed unless the attorney demonstrates to the [c]ourt, by clear and convincing evidence," that:

> (1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
>
> (2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the [c]ourt could not, consistently with its duty, accept as final the conclusion on that subject; or
>
> (3) The imposition of the same discipline by the [c]ourt would result in grave injustice; or
>
> (4) The misconduct established warrants substantially different discipline in the District of Columbia; or

(5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

*Id.*; *see also* R. XI, § 11(e) ("If the Court decides that a referral to the Board [on Professional Responsibility (the "Board")] is unnecessary, it shall impose identical discipline unless the attorney demonstrates by clear and convincing evidence, or the [c]ourt finds on the face of the record, that one or more of the grounds set forth in subsection (c) of this section exists."). In interpreting R. XI, § 11(c)(4), "we have made clear that the sanction from the foreign jurisdiction need not be one that [ODC] would have sought had it been an original proceeding in the District; the sanction need only fall within the range of sanctions possible here in the District." *In re Katz*, 150 A.3d 778, 781 (D.C. 2016) (per curiam) (internal quotation marks omitted). "[E]ven where the discipline imposed in this jurisdiction would have been different from that of the disciplining court, we depart from reciprocal discipline only if the difference is substantial." *Id.* (internal quotation marks omitted).

As noted above, in 23-BG-478, ODC asks us to impose, as reciprocal discipline, a six-month suspension with reinstatement in the District of Columbia conditioned on a showing of fitness. Also noted above, respondent does not contest the six-month suspension, and ODC agrees with him that the suspension should begin to run as of the effective date of the New Jersey suspension. The

parties' disagreement is as to a fitness requirement *vel non*. In 24-BG-301, ODC asks us to impose a three-month suspension with reinstatement in the District of Columbia conditioned on both a showing of fitness and proof of reinstatement in New Jersey. Respondent contends, however, that conditioning his reinstatement to practice in the District of Columbia on proof of fitness would result in a grave injustice and that his misconduct does not warrant imposition of a fitness requirement.

## A.

We address only briefly respondent's argument that a fitness requirement would result in "grave injustice" under D.C. Bar R. XI, § 11(c)(3). Respondent's rationale is that a requirement to prove fitness would have the effect of prolonging his suspension in the District and thus prevent him from practicing in federal immigration courts. He asserts that his inability to practice in the federal immigration courts would harm the underserved, minority community that he represents in those courts. The DRB rejected the similar argument respondent presented to that body—that respondent's work with an underserved clientele should be considered in mitigation—instead treating respondent's failure to take "special care" in dealing with vulnerable clients as an aggravating factor. For much the same reason, we discern no "grave injustice" from imposition of a fitness

requirement before reinstatement in our jurisdiction. We have said that an "'obvious miscarriage of justice' which is required for a departure from the presumed identical discipline is 'a situation that we anticipate would rarely, if ever, present itself.'" *In re Berger*, 737 A.2d 1033, 1045 (D.C. 1999) (quoting *In re Spann*, 711 A.2d 1262, 1265 (D.C. 1998)). We are not persuaded that such a rare situation is presented here.[6]

**B.**

D.C. Bar R. XI, § (3)(a)(2) lists "[s]uspension for an appropriate fixed period of time not to exceed three years" as an available "disciplinary sanction[]" and states that "[a]ny order of suspension may include a requirement that the attorney furnish proof of rehabilitation [i.e., a fitness requirement] as a condition of reinstatement." We have explained that the reason for imposing a fitness requirement "is conceptually different from the reason for suspending a respondent for a period of time" as a disciplinary sanction. *In re Cater*, 887 A.2d 1, 22 (D.C. 2005); *see also id.* at 5-6, 20 (undertaking "to enunciate a precise standard as to when a fitness requirement should be imposed" and to clarify "the legal standard to

---

[6] Likewise, we see no merit in respondent's suggestion that any further suspension in 24-BG-301 would constitute a grave injustice because of the length of his interim suspension to date. Respondent's suspension in the District will run nunc pro tunc to his suspension in New Jersey.

be followed in deciding whether [imposition of a] so-called fitness requirement is warranted"). We further explained in *Cater* that "[t]he fixed period of suspension is intended to serve as the commensurate response to the attorney's past ethical misconduct[,]" while "[i]n contrast, the open-ended fitness requirement is intended to be an appropriate response to serious concerns about whether the attorney will act ethically and competently in the future, after the period of suspension has run." *Id.* at 22. We added that "while the decision to suspend an attorney for misconduct turns largely on the determination of historical facts, the decision to impose a fitness requirement turns on a partly subjective, predictive evaluation of the attorney's character and ability." *Id.* Accordingly, we have said, "proof of a violation of the Rules [of Professional Conduct] that merits even a substantial period of suspension is not necessarily sufficient to justify a fitness requirement[.]" *Id.* We held in *Cater* that "to justify conditioning the reinstatement of a suspended attorney on proof of rehabilitation, the record in the disciplinary proceeding must contain clear and convincing evidence that casts a serious doubt upon the attorney's continuing fitness to practice law." *Id.* at 24 (internal quotation marks omitted). The requisite "serious doubt" connotes "real skepticism, not just a lack of certainty." *Id.* (internal quotation marks omitted); *see also In re Guberman*, 978 A.2d 200, 213 (D.C. 2009) ("[T]he 'serious doubt' that *Cater* requires for

imposition of a fitness requirement must involve more than 'no confidence that [a] [r]espondent will not engage in similar conduct in the future.'").

New Jersey law requires, as a matter of course, "that when a respondent has been suspended from the practice of law, []he is required to file a petition for reinstatement establishing fitness to resume practice of law[.]" *In re Abraham*, 974 A.2d 859, 859 (D.C. 2009) (order) (quoting *In re Richardson*, 935 A.2d 1076, 1078 (D.C. 2007) (per curiam)); *see* N.J. Ct. R. 1:20-21(a), (f). Thus, New Jersey "automatically impose[s]" a fitness requirement for reinstatement of suspended attorneys. *Berger*, 737 A.2d at 1045-46.

## C.

In the view of the author of this opinion, if there is a substantial question in the instant case about whether to proceed just as New Jersey did, it rests on what the author sees as the tension between our jurisprudence about identical "discipline" and our explanation in *Cater* about the rationale for imposition of a fitness requirement.[7] Notwithstanding the distinction we drew in *Cater*, our reciprocal-discipline case law has continued to treat imposition of a fitness requirement as a component of discipline that is subject to the § 11(c) rebuttable

---

[7] Respondent highlights this tension, emphasizing our statement in *Cater* that "proof of a violation . . . that merits even a substantial period of suspension is not necessarily sufficient to justify a fitness requirement[.]" 887 A.2d at 22.

presumption of identical discipline that applies when an attorney has been suspended in another jurisdiction. *See, e.g.*, *In re Williams*, 3 A.3d 1179, 1185 (D.C. 2010) (observing that imposition of a fitness requirement where the original-disciplining jurisdiction did not impose one "would constitute substantially different discipline pursuant to the exception to the imposition of identical reciprocal discipline in . . . § 11(c)(4)"). In *In re (Maria) Gonzalez*, we took that approach notwithstanding New Jersey's automatic imposition of a requirement that a suspended attorney demonstrate fitness to be reinstated. 967 A.2d 658, 660-61 (D.C. 2009) (determining, in reciprocal-discipline case involving a respondent who was suspended in New Jersey, that "none of the grounds enumerated in § 11(c) is established on the face of the record" and therefore applying a "presumption that proof of fitness will be required here as a component of identical reciprocal discipline"). The result is that, notwithstanding what we said in *Cater*, we have defaulted to imposing this onerous obligation without specifically considering whether the record evidence casts a serious doubt about the respondent's ability to practice law competently and ethically in the future.

In the author's view, nothing in R. XI squarely addresses whether a fitness requirement is itself "discipline" or an element of "reciprocal discipline."[8]  That is, Rule XI, § (3)(a)(2) lists suspension as an available "disciplinary sanction[]" and states that an "order of suspension" may include a requirement to show fitness as a condition of reinstatement, but it does not say whether a fitness requirement constitutes "discipline."  Likewise, the reference in § 11(c)(4) to "substantially different discipline" does not indicate whether a fitness requirement constitutes "discipline" that is "warrant[ed]" for the misconduct.  In the author's view, at least arguably, a fitness requirement, which this court has referred to as an "onerous obligation,"[9] is not itself "discipline" within the meaning of R. XI, § 11 (and thus is not "identical discipline").

---

[8] *But see* D.C. Bar R. XI, § 9(g)(1) (referring to "suspension requiring proof of fitness as a condition of reinstatement" as a form of "discipline" that might be recommended by the Board); D.C. Bar R. XI, § 9(h)(1) (referring to cases in which the Board's recommended "sanction includes a requirement that the attorney make a showing of fitness before reinstatement"); *see also, e.g.*, *Berger*, 737 A.2d at 1043 (adhering to "the strong presumption in favor of imposing [an] identical sanction in a reciprocal discipline proceeding" and therefore requiring the respondent "to demonstrate that he is fit to practice law upon the termination of his two-year suspension").

[9] *In re Olivarius*, 90 A.3d 1113, 1117 (D.C. 2014) (stating that "[i]f no serious doubt exists about an attorney's fitness, it would be unnecessary and unfair to augment the sanction of a limited period of suspension with such an onerous obligation" (quoting *Cater*, 887 A.2d at 24)).

All that said, all members of the division agree that we need not resolve the tension (if there is one) in this case because, as further explained below, we conclude that the record in these consolidated matters raises the requisite "serious doubt" about respondent's ability to practice law that we require for imposition of a fitness requirement.

**D.**

As we observed in *In re Adams*, this court has imposed a fitness requirement in original-discipline matters where "an attorney show[ed] a lack of remorse; failed to cooperate or engaged in questionable conduct during the disciplinary process; engaged in repeated neglect of client matters; engaged in repeated misconduct of the type for which the attorney was previously disciplined; or failed to resolve misconduct attributed to [his] personal problems and pressures." 191 A.3d 1114, 1121 (D.C. 2018) (citing *Guberman*, 978 A.2d at 211).

Here, several aspects of the record lead us to conclude that a fitness requirement is warranted. First, respondent's New Jersey disciplinary history shows a pattern of prolonged and repeated neglect, affecting a large number of clients, over a period of many years. We have said that one "circumstance that warrants imposing a condition on the resumption or continuation of practice is repeated neglect of client matters or a repeat of misconduct of the type for which a

respondent was previously disciplined." *Guberman*, 978 A.2d at 211; *see also In re Boykins*, 999 A.2d 166, 176 (D.C. 2010) (explaining that "prior discipline" and "repeated misconduct" weigh in favor of a fitness requirement). We note that this factor is partially mitigated in respondent's case by (what we understand to be) the fact that his wife will no longer be involved in his practice and that his reinstatement in New Jersey is conditioned upon practice monitoring. *See Adams*, 191 A.3d at 1122 (declining to impose a fitness requirement where steps had been taken to "reduce[] the likelihood" that the circumstances leading to severe client neglect would be repeated and imposing practice monitoring instead as a condition of reinstatement). However, as the DRB noted in its report regarding respondent's most recent discipline, respondent's "significant history of repeating misconduct, despite taking corrective steps, precludes . . . weighing these alleged remedial measures as significant mitigation." We similarly are unable to regard respondent's remedial measures as sufficient to allay serious doubt about his fitness to practice.

Next, while respondent has shown a degree of remorse and general acceptance of responsibility, respondent nonetheless has an established pattern of downplaying the severity of his conduct and deflecting blame to others. He focuses most often on his wife, but he has also deflected blame to his counsel in disciplinary proceedings, the courts, and the vulnerable clients he has represented.

*See In re Lattimer*, 223 A.3d 437, 453-54 (D.C. 2020) (per curiam) (imposing a fitness requirement because of, inter alia, the attorney's pattern of "seek[ing] to blame others, most frequently his clients"). For example, in *Gonzalez III*, respondent blamed his juvenile clients for their failure to appear at an immigration hearing (at which he also did not appear) that resulted in orders of removal against them. Similarly, the DRB observed in the matter resolved as *Gonzalez IV* that respondent "argued that his misconduct caused no harm, and he sought to deflect blame to his illiterate client, his staff, and the courts." And while it does appear that much of respondent's past misconduct is in one way or another traceable to his wife's conduct, we agree with ODC that respondent has failed to acknowledge that his most recent "discipline was based on his own dishonesty rather than his wife's malfeasance[.]"

This brings us to our final significant concern: respondent's repeated lack of candor in his disciplinary proceedings both in New Jersey and before this court. We have already noted that the DRB found respondent's testimony not credible on many factual points. His most recent round of discipline was based specifically upon lack of candor/dishonesty offenses during the disciplinary process itself, specifically, that he failed to disclose that he had rehired his wife and instead "knowingly fostered and, further, sought to preserve, as a potential mitigating factor, the continuing misapprehension that he had once and for all addressed [his

wife's] pervasive undermining of his practice[,]" doing so knowing the omission was "reasonably certain to mislead the tribunal[.]" N.J. R. of Pro. Conduct 3.3(a)(5).

When respondent appeared before this court for oral argument on February 22, 2024, he assured us that he was "back" in New Jersey and that no fitness requirement was necessary because his past misconduct had all been addressed. This was over two months after the DRB had recommended yet another three-month suspension on December 13, 2023. It is true that respondent did not affirmatively state he *did not* have further disciplinary proceedings pending, and that we did not ask about any pending matters. But respondent left us with the misimpression that his prior disciplinary issues had been addressed, and respondent either knew or should have known that this was relevant to our prospective assessment of his fitness to practice law. This striking lack of candor, occurring after respondent purported to have addressed all of his prior ethical issues, contributes significantly to our "serious doubt" about his ability to practice law ethically in the future. We conclude that his lack of candor, taken together

with all of the foregoing aspects of his disciplinary history, warrants the imposition of a fitness requirement.[10]

**E.**

As to whether we should also condition respondent's reinstatement from his period of suspension on his reinstatement in New Jersey, we note that he represented at oral argument that, as a general matter, he "would not apply for reinstatement in any jurisdiction until and unless I was reinstated in New Jersey. . . . I believe that being reinstated in the original jurisdiction should be a given and then move forward to reinstatement in supplementary jurisdictions." Taking him at his word, we find it reasonable to impose as an additional condition on reinstatement that respondent first be reinstated in New Jersey.

**

Accordingly, in 23-BG-478, we suspend respondent from the practice of law in the District of Columbia for six months, nunc pro tunc to April 11, 2023, a

---

[10] We also note that in recommending that respondent be required to practice under the supervision of a practice monitor upon his reinstatement in New Jersey, the DRB described that recommended condition as necessary "to protect the public[.]" This indicates to us that the DRB, too, had concern that respondent would not be entirely fit to return to the practice of law at the end of his suspension.

period of suspension already covered by his interim suspension in these matters. In 24-BG-301, we suspend respondent from the practice of law for three months, effective nunc pro tunc to April 21, 2024. Finally, his reinstatement to the practice of law is conditioned upon both a showing of fitness and proof of reinstatement in New Jersey. It is

*So ordered.*

MCLEESE, *Associate Judge*, with whom *Associate Judge* EASTERLY joins, concurring in part and concurring in the judgment: I join all but Part II.C of Judge Thompson's opinion. In Part II.C, Judge Thompson first expresses concern about a perceived tension between our cases addressing reciprocal discipline and our cases discussing the showing that must be made to warrant imposition of a fitness requirement. *Supra* at 19-20. I do not perceive any such tension.

As Judge Thompson explains, when this court is deciding whether to impose a fitness requirement as an original matter, the court determines whether there is "clear and convincing evidence that casts a serious doubt upon the attorney's continuing fitness to practice law." *In re Cater*, 887 A.2d 1, 24 (D.C. 2005) (internal quotation marks omitted). In reciprocal-discipline cases, however, we do not ourselves determine in the first instance the discipline that we would impose under our own rules. Rather, "D.C. Bar R. XI, § 11(c) establishes a rebuttable

presumption in favor of this court's imposition of discipline identical to that imposed by the original disciplining jurisdiction." *In re Sibley*, 990 A.2d 483, 487 (D.C. 2010). "The presumption applies unless the party opposing discipline (or urging non-identical discipline) shows, by clear and convincing evidence, that an exception should be made . . . ." *Id.* at 487-88. "Rule XI, § 11(c) imposes a rigid standard, as to which exceptions should be rare." *Id.* at 488 (internal quotation marks omitted).

In this reciprocal-discipline case, New Jersey imposed a fitness requirement. *Supra* at 19. The burden therefore is on Mr. Gonzalez to show by clear and convincing evidence that an exception should be made to the presumption that we impose identical discipline. Essentially for the reasons given by Judge Thompson in Parts II.A and II.D of the opinion for the court, Mr. Gonzalez has not carried the burden of showing that an exception to the presumption of identical discipline should be made in this case. *See, e.g.*, D.C. Bar R. XI, § 11(c)(3) & (4) (exception to presumption of identical discipline applies if attorney can show by clear and convincing evidence that imposition of identical discipline would "result in grave injustice" or that attorney's conduct "warrants substantially different discipline in the District of Columbia").

It is true, as Judge Thompson notes, that New Jersey automatically imposes a fitness requirement when an attorney has been suspended, whereas this court does not. *Supra* at 17-19. Our rules, however, contemplate the possibility that an original disciplining jurisdiction might take a different approach to the imposition of sanctions than this court does. The solution reflected in our rules is to presume identical discipline but permit a departure from identical discipline if an attorney can carry the burden of proving that an exception should be made.

Judge Thompson also questions whether a requirement to show fitness before being reinstated is properly understood to be a disciplinary sanction. *Supra* at 21. For several reasons, I see no basis for doubt on that point. First, the rules repeatedly and explicitly describe a fitness requirement as a form of discipline. D.C. Bar R. XI, § 3(a)(2) describes, as a type of discipline, suspension that "may include a requirement that the attorney furnish proof of rehabilitation as a condition of reinstatement." D.C. Bar R. XI § 9(g)(1), discussing interim suspensions by the court, refers to "discipline in the form of . . . suspension requiring proof of fitness as a condition of reinstatement." D.C. Bar R. XI § 9(h)(1) refers to cases in which the recommended "sanction includes a requirement that the attorney make a showing of fitness before reinstatement." Second, our cases (including reciprocal-discipline cases) have consistently treated a fitness requirement as a form of discipline. *See, e.g., In re Keller*, 308 A.3d 201,

202 (D.C. 2024) (per curiam); *In re Berger*, 737 A.2d 1033, 1040-44 (D.C. 1999). Third, if a fitness requirement is not a form of attorney discipline, I am not sure what exactly a fitness requirement should be understood to be or what the court's basis would be for imposing such a requirement in disciplinary cases.